Video Wisconsin, Ltd., Plaintiff-Appellant,

v.

Wisconsin Department of Revenue, Defendant-Respondent.

Court of Appeals

*No. 91-2688.  Submitted on briefs May 8, 1992.—Decided March 4, 1993.*

(Also reported in 498 NW2d 880.)

For the plaintiff-appellant the cause was submitted on the briefs of *Kirby O. Bouthilet* of Green Bay.

For the defendant-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Alan Lee,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Video Wisconsin, Ltd. (Video) seeks classification by the Wisconsin Department of Revenue as a manufacturing establishment whose personal property shall be assessed by the department under sec. 70.995(5), Stats.[1] Video's ultimate objective is to have its "manufacturing machinery and specific processing equipment" exempted from general property taxes under sec. 70.11(27), Stats.[2] However, the controlling issue in this appeal is whether the manufacturing section of the department's board of assessors correctly denied Video's application for classification as a manufacturing establishment.

Video petitioned the Wisconsin Tax Appeals Commission for review of the board of assessors' adverse determination. The commission affirmed the board's

---

[1] This case involves the taxpayer's objection to its 1988 classification. Therefore, the 1987-88 statutes apply.

[2] Section 70.11, Stats., provides in part: "Property exempted from general property taxes is: . . . (27) Manufacturing machinery and specific processing equipment, exclusively and directly used by a manufacturer in manufacturing tangible personal property."

determination. The circuit court affirmed the commission's order and decision and we affirm the judgment of the circuit court.

In the usual case, general property is assessed for taxation by a municipal or county assessor. Section 70.05(1), Stats. However, "property of manufacturing establishments" is assessed under sec. 70.995, Stats. Section 70.05(3), Stats. Section 70.995(5), Stats., provides: "[T]he department of revenue shall assess all property of manufacturing establishments included under subs. (1) and (2) as of the close of January 1 of each year." Subsections (1) and (2) of sec. 70.995 define and classify "manufacturing property." Subsection (2) is not pertinent to our decision. Section 70.995(1), Stats. provides:

(a)  In this section "manufacturing property" includes all lands, buildings, structures and other real property used or, if vacant, designed for use in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit. Manufacturing property also includes warehouses, storage facilities and office structures when the predominant use of the warehouses, storage facilities or offices is in support of the manufacturing property, and all personal property owned or used by any person engaged in this state in any of the activities mentioned, and used in the activity, including raw materials, supplies, machinery, equipment, work in process and finished inventory when located at the site of the activity. . ..

. . ..
(d)  Establishments engaged in the following operations are not engaged in manufacturing for the purposes of this section:

. . ..
18.  The operation of recording studios.

197

The department supported the board of assessors' determination before the commission on two grounds: (1) Video operates a "recording studio" which is excluded from classification as a manufacturing establishment by sec. 70.995(1)(d)18, Stats.; and (2) Video's business activities are not "manufacturing," but are "services" as determined by the standard industrial classification manual adopted by sec. 70.995(2), Stats. The commission agreed with the department that Video operates a "recording studio" and did not reach the second basis for the board's determination. Therefore, our review is limited to the commission's decision and order that Video operates a "recording studio."

The commission found that Video has facilities for both production and postproduction operations. "Production" is a term denoting the acquisition of audio or video source material by capturing it on film or video tape. "Postproduction" describes the process of integrating the source materials into a final product—the "edited master." Video's production services represent a small portion of Video's business and capital investment.

Video accepts the commission's description of its postproduction services:

> [P]ost-production involves a technical or even creative process of putting tapes together, changing them, adding new images with special effects, and computer graphics. The essence of post-production operation is not to record new material, be it audio or visual, but to take already recorded material and alter, manipulate, and augment it using complex machinery to make a finished product. The result is a one-inch edited master.

Thus, there is no difference of opinion between Video and the commission as to what Video does; the differ-

ence of opinion is found in the commission's determination that Video's postproduction operations are not manufacturing and Video's contention that they are. The parties agree that this difference of opinion presents a question of law. *L & W Constr. Co. v. DOR*, 149 Wis. 2d 684, 688, 439 N.W.2d 619, 620 (Ct. App. 1989) (application of statute to set of facts is question of law).

Video concedes that courts generally defer to the commission's legal conclusions. *McManus v. DOR*, 155 Wis. 2d 450, 453, 455 N.W.2d 906, 907 (Ct. App. 1990). However, it argues that there is no evidence that the commission has any special expertise or experience in applying the applicable statutes to these facts of first impression. Therefore, we should give no weight to the commission's interpretation. *See, e.g., Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). ▪.

Video would apply *Local No. 695* more broadly than the language of that decision warrants. The department has been classifying manufacturing property since May 1, 1974, the effective date of the manufacturing machinery and equipment assessment and exemption law. Section 348, ch. 90, Laws of 1973. The commission has reviewed numerous determinations by the department under sec. 70.995, Stats. *See, e.g., Village of West Milwaukee v. DOR*, Nos. 89-M-54, 89-M-55, 89-M-62 through 89-M-82, 89-M-83 through 89-M-104 (Wisconsin Tax Appeals Comm'n Feb. 12, 1992) (taxpayers' vaporizers and gas storage tanks exempted under sec. 70.11(27), Stats., as manufacturing property defined in sec. 70.995); *Delco Corp. and The DeLong Co., Inc. v. DOR*, No. 88-M-453 (Wisconsin Tax Appeals Comm'n May 2, 1990) (taxpayers' greenhouses not manufacturing property under sec. 70.995); *Karthauser & Sons, Inc. v. DOR*, Nos. 88-M-140, 88-M-141 (Wisconsin Tax

Appeals Comm'n Sept. 8, 1989) (taxpayer's corn processing facility was manufacturing equipment under sec. 70.995). It is appropriate to give weight and deference to the commission's interpretation of a statute where it has experience and has developed expertise in construing a statute, although not on the precise question involved in a particular case. *Susie Q Fish Co. v. DOR*, 148 Wis. 2d 862, 868-69, 436 N.W.2d 914, 917 (Ct. App. 1989).

We will sustain the commission's legal conclusion if it is reasonable, even though an alternative view may likewise be reasonable. *L & W Constr. Co.*, 149 Wis. 2d at 689, 439 N.W.2d at 620. The commission's conclusion that Video's postproduction operations constitute the operation of a recording studio is reasonable.

Video argues that the commission adopted a "gerrymandered definition" of recording studio. It argues that the difference between "to be recorded" and "manufacturing" is "striking." It contends: " 'To record' connotes copying something which exists, transferring or registering some data or signals or information. 'Manufacturing' on the other hand, connotes change, alteration into a new article with a new and different form, use and name."

The commission concluded that the phrase "[t]he operation of recording studios" has no technical or peculiar meaning in the law. It therefore construed the phrase according to the dictionary definitions of its components. *See* sec. 990.01 (introduction) and (1), Stats. It selected definitions of "recording" which included: "[Adjective] that records . . . [noun] the act of one that records . . . what is recorded, as on a disc or tape . . . the record itself," citing WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1187 (2d collegiate ed. 1972). It selected a definition of "studio" which

200

included: "[noun] . . . a room or rooms where radio or television programs are produced or where recordings are made." *Id.* at 1414.

From these definitions, the commission concluded that "the operation of recording studios" means "the act of operating a room or rooms where radio or television programs are produced or where recordings as on a disc or tape are made." The commission reasoned:

> The end-product [of postproduction] is an "edited master," a video recording of various source materials, probably visually manipulated or augmented by the use of modern "hi-tech" machinery to produce state of the art visual effects. The edited master is, however, itself a "recording" in the commonly accepted sense of the word. Petitioner's machinery is implemented to produce such recordings, irrespective of the use of outside source material. Its facilities consist primarily of sound or video studios. There is nothing suggested in the term "recording studios" which requires that the recording be of "live" or original source material. On the other hand, petitioner does *much* more than duplication work. Despite its complexity and sophistication, petitioner's post-production operation still remains a recording studio. [Emphasis in original.]

Video offers alternative definitions of "recording" and "studio." It argues that some recurring themes become apparent: studios are associated with the creation, study or performance of art; recording is a means of preserving such art for future hearing or review; and to record is to make a copy, or to transfer and register something. Video argues that, in contrast to these themes, its postproduction occurs after any art is created or performance given; its operation involves change rather than mere transfer or copying.

Video's construction of sec. 70.995(1)(d)18, Stats., is reasonable, but the commission's construction is equally reasonable. Where this is the case, we must accept the commission's construction.

Our conclusion answers Video's claim that the record does not contain substantial evidence supporting the commission's finding that Video's primary operation is a recording studio. Video concedes that the commission accurately described its postproduction operations in its findings. We have concluded that the commission's application of the statutes to those operations is reasonable. No further evidence is necessary to support the commission's decision.

We next consider Video's claim that sec. 70.995, Stats., is a classification statute, not an exemption statute. It contends that it should not be required to meet a stricter burden of proof. The commission did not require that Video meet a stricter burden of proof. Nor do we. Video has not been harmed.

Finally, Video argues that even if its post-production operations could be arguably classified as "Business Services" according to the standard industrial classification manual, that does not bar its classification as a manufacturing establishment under sec. 70.995, Stats. It was unnecessary for the commission to reach this issue and it did not. Video states that the circuit court "almost as an aside, criticizes Video's position as to the 'interplay' between its classification under the SIC Manual and sec. 70.995." We review the commission's decision, not the trial court's. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). Once the commission reasonably decided that Video was a recording studio under sec. 70.995(1)(d)18, Stats., it was unnecessary for it to consider Video's further argu-

ment. Likewise, it is unnecessary for us to consider its further argument.

*By the Court.*—Judgment affirmed.