S.C. JOHNSON & SON, INC., Petitioner-Appellant, †

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-Respondent.

Court of Appeals

*No. 95–3215. Submitted on briefs April 12, 1996.—Decided June 6, 1996.*

(Also reported in 552 N.W.2d 102.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *Timothy C. Frautschi* of *Foley & Lardner* of Milwaukee.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gerald S. Wilcox*, asst. attorney general.

Before Gartzke, P.J., Sundby and Vergeront, JJ.

VERGERONT, J. S.C. Johnson & Son, Inc. (taxpayer) appeals from an order affirming the determination of the Wisconsin Tax Appeals Commission that certain of the taxpayer's real estate is not "manufacturing property" within the meaning of § 70.995, STATS.[1] Manufacturing property is assessed

---

[1] Section 70.995, STATS., provides in relevant part:

**State assessment of manufacturing property. (1)** APPLICABILITY. (a) In this section "manufacturing property" includes all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit. Manufacturing property also includes warehouses, storage facilities and office structures when the predominant use of the warehouses, storage facilities or offices is in support of the manufacturing property, and all personal property owned or used by any person engaged in this state in any of the activities mentioned, and used in the activity, including raw materials, supplies, machinery, equipment, work in process and finished inventory when located at the site of the activity. Establishments engaged in assembling component parts of manufactured products are considered manufacturing establishments if the new product is neither a structure nor other fixed improvement. Materials processed by a manufacturing establishment include products of agriculture, forestry, fishing, mining and quarrying. For the purposes of this section, establishments which engage in mining metalliferous minerals are considered manufacturing establishments.

(b) Materials used by a manufacturing establishment may be purchased directly from producers, obtained through customary trade channels or secured without recourse to the market by trans-

by the Department of Revenue, rather than by the local assessor. Section 70.995(5). We conclude the real estate is not manufacturing property and affirm.

fer from one establishment to another under the same ownership. Manufacturing production is usually carried on for the wholesale market, for interplant transfer or to order for industrial users rather than for direct sale to a domestic consumer.

(c) Manufacturing shall not include the following agricultural activities:

1. Processing on farms if the raw materials are grown on the farm.

2. Custom gristmilling.

3. Threshing and cotton ginning.

(d) Except for the activities under sub. (2), activities not classified as manufacturing in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget are not manufacturing for this section.

(2) FURTHER CLASSIFICATION. In addition to the criteria set forth in sub. (1), property shall be deemed prima facie manufacturing property and eligible for assessment under this section if it is included in one of the following major group classifications set forth in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget.

. . . .

(k) 28-Chemicals and allied products.

(3) For purposes of subs. (1) and (2) "manufacturing, assembling, processing, fabricating, making or milling" includes the entire productive process and includes such activities as the storage of raw materials, the movement thereof to the first operation thereon, and the packaging, bottling, crating or similar preparation of products for shipment.

(4) Whenever real property or tangible personal property is used for one, or some combination, of the processes mentioned in sub. (3) and also for other purposes, the department of revenue, if satisfied that there is substantial use in one or some combination of such processes, may assess the property under this section. For all purposes of this section the department of revenue shall have sole discretion for the determination of what is substantial use and what description of real property or what unit of tangible personal property shall constitute "the property" to be included for assessment purposes . . . .

717

## BACKGROUND

The material facts are not disputed. The taxpayer is a manufacturer of commercial, consumer and specialty chemical products. The taxpayer's manufacturing plant, research facilities and office building are assessed as manufacturing property by the Department of Revenue. The subject property is Armstrong Park, a recreational/leisure center owned by the taxpayer and situated on a 94-acre parcel of land in the Town of Caledonia, between four and five miles from the taxpayer's other establishments. Armstrong Park consists of picnic areas, tennis courts, softball diamonds and two major buildings—the Johnson Mutual Benefit Association (JMBA) Recreation and Fitness Center and the Child Care Center. The JMBA Center contains a variety of gymnasiums, exercise rooms, an aquatic center, lounges, conference rooms, offices, a kitchen, storage areas and other miscellaneous rooms.

Aside from recreation and child care, the taxpayer uses the Armstrong Park facilities for employee meetings and corporate social events, including dinner parties. The facilities are used exclusively by the taxpayer's employees, retirees, their guests and families, and are not open to the public.

The taxpayer asked the Department to assess Armstrong Park as manufacturing property, arguing that it qualified as such under § 70.995(1), STATS., as well as § 70.995(2), which refers to the Standard Industrial Classification (SIC) Manual, published by the U.S. Office of Management and Budget.

The SIC is a system developed by the federal government for classifying establishments by type of economic activity. The purpose of the SIC is to facilitate the collection, tabulation, presentation and analysis of

data relating to establishments and to promote uniformity and comparability of statistical data. STANDARD INDUSTRIAL CLASSIFICATION MANUAL, 11 (1987).[2]

Under the SIC Manual, establishments primarily engaged in performing management or support services for other establishments of the same enterprise are called "auxiliary establishments." A recreational facility or child day care facility maintained by an enterprise solely for the benefit of its employees is classified as an auxiliary. Auxiliary establishments have the same SIC classification as the primary activity of the operating establishment they serve. The taxpayer's operating establishment falls within the SIC manufacturing major group classification 28—Chemicals and Allied Products. Therefore, the Armstrong Park facilities, as auxiliary facilities, fall within that same classification.

---

[2] The basic principles underlying the SIC classification are:

(1) The classification is organized to reflect the structure of the U.S. economy. It does not follow any single principle, such as end use, nature of raw materials, product, or market structure.

(2) The unit classified is the establishment. An establishment is an economic unit that produces goods or services—for example, a farm, mine, factory, or store. In most instances, the establishment is at a single physical location and is engaged in one, or predominately one, type of economic activity. An establishment is not necessarily identical with a company or enterprise.

(3) Each establishment is classified according to its primary activity. Primary activity is determined by identifying the predominant product or group of products produced or handled, or service rendered.

(4) An industry (four-digit SIC) consists of a group of establishments primarily engaged in the same activity. To be recognized as an industry, such a group of establishments must meet certain criteria of economic significance.

STANDARD INDUSTRIAL CLASSIFICATION MANUAL, 699 Appendix B (1987).

When the Department refused the taxpayer's request to assess Armstrong Park as manufacturing property, the taxpayer filed a Form of Objection to Manufacturing Classification Decision with the Department's State Board of Assessors. The Board of Assessors denied the request.

The taxpayer filed a petition for review with the Wisconsin Tax Appeals Commission. The Commission granted summary judgment to the Department. The Commission concluded that Armstrong Park does not qualify as manufacturing property under § 70.995(1), STATS., because it is not used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit, and is not a warehouse, storage facility or office structure, the predominant use of which is in support of the taxpayer's manufacturing property.

The Commission also determined that Armstrong Park does not qualify as manufacturing property under § 70.995(2), STATS. The Commission acknowledged that the Armstrong Park facilities are classified in major group 28 of the SIC Manual, and that, pursuant to § 70.995(2), Armstrong Park is therefore "deemed prima facie manufacturing property." However, citing § 903.01, STATS.,[3] the Commission stated that the SIC Manual merely created a presumption that Armstrong Park is manufacturing property, which the Depart-

---

[3] Section 903.01, STATS., provides:

Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

720

ment had successfully rebutted "by showing that Armstrong Park fails to meet any of the 'manufacturing property' criteria required by related subsections (1) and (3) of § 70.995 or of the Wisconsin Property Assessment Manual." (Emphasis in original.) The Commission also stated that even if it could find some manufacturing activity or process occurring at Armstrong Park along with the substantial recreational use, the taxpayer's claim would still fail because of the Department's "nearly total" discretion under § 70.995(4) in determining what, if any, portion of such property to assess. The trial court affirmed the Commission's decision.

The resolution of this case depends on an interpretation of § 70.995, STATS. The ultimate goal of statutory interpretation is to ascertain the intent of the legislature. *Rolo v. Goers,* 174 Wis. 2d 709, 715, 497 N.W.2d 724, 726 (1993). We first look to the language of the statute itself. *See UFE Inc. v. LIRC,* 201 Wis. 2d 274, 281, 548 N.W.2d 57, 60 (1996). If the plain meaning of the statute is clear, we do not look to rules of statutory construction or other extrinsic aids. *Id.* Instead, we apply the clear meaning of the statute to the facts of the case. *Id. at 281–82, 548 N.W.2d at 60.* However, if the statute is ambiguous, we may examine the scope, history, subject matter and purpose of the statute. *Id. at 282, 548 N.W.2d at 60.* Furthermore, if the administrative agency has been charged with the statute's enforcement, a court may also look to the agency's interpretation. *Id.*

## DISCUSSION

Section 70.995(5), STATS., provides that the Department "shall assess all property of manufactur-

721

ing establishments included under subs. (1) and (2) [of § 70.995]." The taxpayer contends that Armstrong Park qualifies as manufacturing property under both § 70.995(1) and (2).

The first two sentences of § 70.995(1)(a), STATS., provide:

> In this section "manufacturing property" includes all lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit. Manufacturing property also includes warehouses, storage facilities and office structures when the predominant use of the warehouses, storage facilities or offices is in support of the manufacturing property, and all personal property owned or used by any person engaged in this state in any of the activities mentioned, and used in the activity, including raw materials, supplies, machinery, equipment, work in process and finished inventory when located at the site of the activity.

These two sentences create three categories of manufacturing property: (1) lands, buildings, structures and other real property used in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit; (2) warehouses, storage facilities and office structures when the predominant use is in support of property belonging to the first group; and (3) all personal property owned or used by any person in this state in any of the activities mentioned, and used in the activity. The third category does not concern us. The second category we will sometimes refer to as "support structures."

The taxpayer concedes that the Armstrong Park facilities are not within the first category and also con-

cedes that the facilities are not warehouses, storage facilities or office structures. However, the taxpayer maintains that because the facilities are used predominantly in support of its manufacturing property, they should nonetheless qualify as manufacturing property under the second category. We disagree. Section 70.995(1)(a), STATS., does not provide that structures used predominantly in support of manufacturing property are manufacturing property. It plainly limits the support structures that qualify as manufacturing property to warehouses, storage facilities or office structures.[4]

■

The taxpayer may be correct that recreational and child care facilities are frequently incorporated into office buildings or manufacturing plants and are increasingly a necessary part of the corporate facility. We also understand that the Armstrong Park facilities are used for corporate meetings, seminars and receptions. However, we cannot ignore the plain language of the statute. Armstrong Park is not incorporated into a structure that is used for manufacturing and it is not a warehouse, storage facility or office structure. When the language of a statute is plain on its face, our inquiry ends and we must apply that language to the facts of the case. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 201, 496 N.W.2d 57, 61 (1993). We conclude that

---

[4] We note that while the WISCONSIN PROPERTY ASSESSMENT MANUAL does list establishments that are considered to be in support of manufacturing in addition to warehouses, storage facilities and office structures, it also specifically provides that recreation facilities maintained for the benefit of employees are not considered to be in support of manufacturing. WISCONSIN PROPERTY ASSESSMENT MANUAL, Vol. 1, Part 1 at 10-8 (Revised 12/93).

Armstrong Park does not meet the definition of manufacturing property under § 70.995(1)(a), STATS.

The taxpayer also contends that § 70.995(2), STATS., provides a separate basis for determining whether property is manufacturing property, independent of § 70.995(1). Section 70.995(2) provides in part:

> In addition to the criteria set forth in sub. (1), property shall be deemed prima facie manufacturing property and eligible for assessment under this section if it is included in one of the following major group classifications set forth in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget.
>
> . . . .
>
> (k) 28-Chemicals and allied products.

The taxpayer argues that because the Armstrong Park facilities come within the SIC definition of auxiliary establishments and are therefore classified in major group 28, Armstrong Park is "deemed prima facie manufacturing property and eligible for assessment" by the Department.

The Department responds that § 70.995(2), STATS., must be read in conjunction with § 70.995(1). The Department argues that while the taxpayer's production of chemical products is a manufacturing activity, this does not mean that all of its property is to be assessed as manufacturing property. According to the Department, even if the Armstrong Park facilities are included in one of the SIC Manual's manufacturing classifications under § 70.995(2), they must still come within one of the three categories of manufacturing property in § 70.995(1)(a). In the Department's view, to

conclude otherwise would make that portion of § 70.995(1)(a) superfluous.[5]

We conclude that both interpretations are reasonable. The statute is therefore ambiguous. *See State v. Martin*, 162 Wis. 2d 883, 894, 470 N.W.2d 900, 904 (1991) (ambiguity arises when more than one reasonable, although not necessarily correct, meaning can be attributed to a word, phrase or statute). We therefore turn to extrinsic sources and rules of statutory construction in order to determine the intent of the legislature in enacting § 70.995(2), STATS. *See UFE Inc.*, 201 Wis. 2d at 283, 548 N.W.2d at 61. One such extrinsic source is the interpretation of the agency charged with enforcing the statute. *Id.*

The Department contends that the Commission's interpretation of § 70.995, STATS., is entitled to great weight for two reasons. First, citing *Video Wisconsin, Ltd. v. DOR*, 175 Wis. 2d 195, 498 N.W.2d 880 (Ct. App. 1993), the Department argues that the Commission has longstanding experience in interpreting § 70.995. Second, the Department contends that the legal question is intertwined with factual determinations.

We disagree. The Commission did not rely on any precedent in reaching its conclusion. The Department acknowledged before the trial court that the taxpayer's appeal to the Department's State Board of Assessors was "the first appeal in the past 20 years to the State Board of Assessors to contest a denial to classify an auxiliary establishment as manufacturing." The experience the Department has gained in classifying

---

[5] Because of our construction of § 70.995(1) and (2), STATS., we do not address the Department's argument that subsec. (2) creates a rebuttable presumption or that subsec. (4) grants it sole discretion to determine what is manufacturing property.

manufacturing property generally does not provide special expertise to resolve the legal issue of the relationship between auxiliary classifications under the SIC Manual and § 70.995(1) and (2), STATS. Also, the legal question is not intertwined with factual determinations. The Commission decided the case upon summary judgment and did not make any factual determinations. Accordingly, we review the issue de novo, without deference to the Commission's conclusion. *See Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990).

■ In interpreting § 70.995(2), STATS., we keep in mind that the true meaning of a single subsection of a statute, however precise its language, cannot be considered apart from related subsections. *State v. Williams*, 198 Wis. 2d 516, 527, 544 N.W.2d 406, 410 (1996). We therefore analyze subsec. (2) not in isolation, but in relation to the other subsections of § 70.995.

As we have explained above, the first two sentences of § 70.995(1)(a), STATS., create three categories of manufacturing property, each of which describes the property in relation to the term "manufacturing." The remainder of subsec. (1)(a) and (b) provides some definition to the term "manufacturing." Section 70.995(1)(c) lists certain agricultural activities that are not included in the term "manufacturing." Section 70.995(1)(d) gives further definition to the activities that are included in the term "manufacturing," although it does so in a rather oblique manner. It provides:

> Except for the activities under sub. (2), activities not classified as manufacturing in the standard industrial classification manual, 1987 edition, pub-

726

lished by the U.S. office of management and budget are not manufacturing for this section.

In order to understand subsec. (1)(d), we must refer to subsec. (2) and also understand the legislative history of subsec. (1)(d). Subsection (2)(c)-(v) lists all industries classified in the SIC Manual as manufacturing. Subsection (2)(a), (b), (w), (x), (y) and (z) lists certain industries (or in the case of (z), a facility) that are not classified in the SIC Manual as manufacturing, but for purposes of § 70.995, STATS., are considered manufacturing establishments.

Prior to 1992, § 70.995(1)(d), STATS., contained a long list of activities that were not considered manufacturing, in addition to the agricultural activities excluded under subsec. (1)(c). 1991 Wis. Act 39 amended subsec. (1)(d) to eliminate that list of excluded activities and to replace it with the present statement that, "Except for the activities under sub. (2), activities not classified as manufacturing in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget are not manufacturing for this section." The present version of subsec. (1)(d), then, means that all activities classified as manufacturing in the SIC Manual are included in the statutory definition of manufacturing and that all those activities not classified as manufacturing in the SIC Manual are not included in the statutory definition of manufacturing, except for the activities listed in subsec. (2)(a), (b), (w), (x), (y) and (z).

Section 70.995(3), STATS., elaborates further on the activities in the production process that the term "manufacturing, assembling, processing, fabricating, making or milling" are intended to include.

When the subsections of § 70.995, STATS., are read together, it is evident that there is a distinction between the activities or industries that constitute manufacturing and the property that is considered manufacturing property. The activity or industry this taxpayer is engaged in clearly meets the statutory definition of manufacturing: the taxpayer is engaged in the industry of chemicals and allied products, classified as a manufacturing industry in the SIC Manual and listed at subsec. (2)(k). But, as we have held, Armstrong Park does not come within any of the three categories of manufacturing property in subsec. (1)(a).

The taxpayer asks us to read subsec. (2) as creating a fourth category of manufacturing property—property that meets the definition of an auxiliary establishment for the SIC classifications listed in subsec. (2). We acknowledge that the introductory language of subsec. (2) confuses the distinction between the activities or industries included in the definition of manufacturing and the type of property included in the definition of manufacturing property. Subsection (2) states that property is "deemed prima facie manufacturing *property*" if it is included in the listed SIC classifications of industries. (Emphasis added.) We have searched the legislative history for some indication that the legislature intended this language to refer to all property considered auxiliary property under the SIC Manual for the classifications listed in subsec. (2). We have found no such indication. We are therefore persuaded that the more reasonable interpretation of subsec. (2) is that it defines the activities or industries that are considered manufacturing. It does not add a fourth category of manufacturing property.

We reach this conclusion for two reasons. First, subsec. (1)(d) refers to the classifications in subsec. (2)

728

as "activities." Second, the taxpayer's fourth category subsumes the second category, making the requirement that the support structure be a warehouse, storage facility or office structure superfluous. We are to avoid constructions that result in portions of a statute being superfluous. *State v. Wachsmuth*, 73 Wis. 2d 318, 324, 243 N.W.2d 410, 414 (1976). The definition of support structures in subsec. (1)(a) is narrower than the SIC definition of auxiliary property. If the legislature had intended that the broader SIC definition govern, there would be no need to limit support structures to the three structures listed in subsec. (1)(a). In view of the specific definition of support structures in subsec. (1)(a), we are not persuaded that the legislature intended to adopt the broader SIC definition of auxiliary establishments in subsec. (2).

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). Johnson's Wax is one of Wisconsin's oldest manufacturers, well known for its philanthropy and enlightened management. It has four main facilities in the state: Its corporate headquarters located in the City of Racine; its main U.S. manufacturing facility, known as Waxdale, located about six miles west of its corporate headquarters; its entomology research laboratory, located about three miles north of its corporate headquarters; and the subject property, known as Armstrong Park. The park consists of approximately ninety-five acres on which are constructed various outdoor recreational facilities and two major buildings: the Johnson Mutual Benefit Association (JMBA) Recreation and Fitness Center and the Child Care Center. Armstrong Park is not open to the public and is devoted to recreational, child care and

corporate meeting purposes. In 1991, 1992 and 1993, the JMBA Center, exclusive of the child care facility, was used over fifty percent of the time for business purposes. Johnson's expects that business use as a percentage of total use will continue to expand in future years.

When the business use of the JMBA Center is added to the child care use, the non-recreational use of the subject property was 76% in 1991, 76.4% in 1992, and 77.3% in 1993.

The JMBA Center consists of approximately 101,800 square feet. It contains a large kitchen designed to serve 800 people at a sit-down dinner in the oversized gymnasium. Its Farley Aquatic Center has a large apron or patio adjacent to the pool designed to accommodate company social events or dinner parties. It also has offices, a conference area, a multi-purpose room used for both recreation and business meetings, and telephone/computer booths for corporate use.

The Child Care Center was built in 1991. It contains 16,919 square feet, not including a 4,272 square foot mezzanine. The Child Care Center was constructed to provide child care for those of Johnson's 2,700 employees who have young children. Johnson's believes that the recreational and child care facilities, as well as the conference and social facilities, will attract and retain first-rate employees and increase the productivity of employees.

In 1993, the Wisconsin Department of Revenue denied Johnson's request that Armstrong Park be classified as "manufacturing property" under § 70.995(1), STATS. The Wisconsin Tax Appeals Commission affirmed the department's denial. However, the commission found: "The undisputed evidence shows that the Armstrong Park recreational facilities are classi-

fied in group 28 of the [STANDARD INDUSTRIAL CLASSIFICATION MANUAL] and that, pursuant to § 70.995(2)(k), Armstrong Park is 'deemed prima facie manufacturing property . . . .' "

The commission concluded, however, that the department had overcome the *prima facie* effect of the undisputed evidence by showing that Armstrong Park failed to meet any of the criteria required by § 70.995(1) and (3), STATS., to be classified as manufacturing property. The commission concluded that the department had "nearly total discretion" under § 70.995(4) to determine what, if any, portion of the subject property to assess. The commission therefore granted the department's motion for summary judgment.

I conclude that the department does not have "nearly total discretion" under § 70.995(4), STATS. Section 70.995(4) provides in part:

> Whenever real property or tangible personal property is used for one, or some combination, of the processes mentioned in sub. (3) and also for other purposes, the department of revenue, if satisfied that there is substantial use in one or some combination of such processes, may assess the property under this section. For all purposes of this section the department of revenue shall have *sole discretion* for the determination of what is substantial use and what description of real property or what unit of tangible personal property shall constitute "the property" to be included for assessment purposes . . . .

(Emphasis added.)

The commission credits the department with discretion which is not conferred by § 70.995(4), STATS. The department's "nearly total discretion" under this section is exercised only to classify what part of a mixed

use is manufacturing and what part is not. The commission's "discretion" in this case is to decide a question of law: Are auxiliary services "in support of" manufacturing processes properly classified as manufacturing activities? The answer to that question is not found in § 70.995(1) but in § 70.995(2) which provides in part:

> *In addition to the criteria set forth in sub. (1),* property shall be deemed prima facie manufacturing property and eligible for assessment under this section if it is included in one of the following major group classifications set forth in the standard industrial classification manual, 1987 edition, published by the U.S. office of management and budget. . . .

(Emphasis added.)

Johnson's property is included in the STANDARD INDUSTRIAL CLASSIFICATION (SIC) MANUAL as "28—CHEMICALS AND ALLIED PRODUCTS." SIC MANUAL 132 (1987). The legislative history of § 70.995, STATS., shows that the legislature substituted for a lengthy list of activities that were not considered manufacturing, the classification schedules appearing in the SIC MANUAL. The legislature adopted the SIC MANUAL as a convenient, accurate, and uniform method of classifying property. When the legislature adopted this approach, it also adopted the construction which the Industry and Commodity Classification Branch of the U.S. Bureau of the Census has given to the classifications which the Bureau has established. This process is analogous to Wisconsin's adoption of most of the federal rules of civil procedure. We have repeatedly held that the construction given to the federal counterparts of our rules of civil procedure are at least persuasive.

*See Schauer v. DeNeveu Homeowner's Assoc., Inc.,* 194 Wis. 2d 62, 73, 533 N.W.2d 470, 474 (1995).

The Chief of the Industry and Commodity Classification Branch of the Bureau of the Census informed Johnson's as follows:

> Recreational facilities and child care facilities maintained by a company solely for the benefit of its employees will be classified in the SIC major group of the company—in Johnson's case, a *manufacturing* classification, Major Group 28, Chemicals and Allied Products. On the other hand, if the facilities are used by the general public, they will be classified as Services activities rather than Manufacturing—Major Group 79 for recreational centers and Major Group 83 for child day care facilities.

If Johnson's made its recreational facilities and child care facilities available to the general public, at least in part, the department would then have the "nearly total discretion" to determine what percent of the use, if any, may be classified as manufacturing. However, Johnson's does not allow the general public to use the recreational or child care facilities of Armstrong Park. Therefore, there is no occasion for the department to exercise its discretion under § 70.995(4), STATS.

Because the legislature has adopted the SIC MANUAL to classify manufacturing property, the classifications thereunder must be given effect unless the classification is clearly contrary to the definition of "manufacturing property" in § 70.995(1)(a), STATS. I do not find anything in the definition of "manufacturing property" which requires that the department reject the classification system developed by the Technical Committee on Industrial Classification of the Census

Bureau. The SIC MANUAL classifies "establishments." *Id.* at 11. An establishment is an economic unit, generally at a single physical location, where business is conducted or where services or industrial operations are performed. *Id.* at 12. However, "establishments" may have "auxiliaries." *Id.* at 13. "Auxiliaries are establishments primarily engaged in performing management or support services for other establishments of the same enterprise." *Id.* The SIC MANUAL gives as an example of an auxiliary establishment primarily engaged in performing management or support services, "(10) Recreational facilities such as gymnasiums, golf courses, and swimming pools, maintained by an enterprise for the benefit of its employees." *Id.* at 15. The MANUAL does not list child care centers as auxiliary establishments, undoubtedly because few employers are large enough or enlightened enough to provide such facilities for its employees. However, in response to Johnson's request that the Bureau classify the child care center, the Bureau informed Johnson's that: "Child day care facilities maintained by an enterprise solely for the benefit of its employees are classified as auxiliaries."

The basic flaw in the department's and the commission's reasoning is their failure to appreciate that the legislature by adopting the SIC MANUAL has adopted the concept of "auxiliary establishments." The legislature has recognized that the Standard Industrial Classification developed by the Bureau's Technical Committee on Industrial Classification provides a fairer and more realistic classification of industrial establishments. I would reverse the trial court's decision and instruct the court to remand this matter to the commission and the department with instructions that they are to include property devoted

to auxiliary services for a manufacturing establishment as "manufacturing property."