Gregory R. DANIELS, D.C.,
Petitioner-Respondent,

v.

WISCONSIN CHIROPRACTIC EXAMINING BOARD,
Respondent-Appellant.

Court of Appeals

*No. 2007AP1072. Submitted on briefs February 14, 2008.
—Decided March 12, 2008.*

2008 WI App 59

(Also reported in 750 N.W.2d 951.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Robert M. Hunter*, assistant attorney general.

No brief was submitted by petitioner-respondent *Gregory R. Daniels, D.C.*

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. The Wisconsin Chiropractic Examining Board appeals from a circuit court order reversing its decision to revoke Gregory R. Daniels' license to practice. The circuit court reversed on two grounds. First, it held that the Board did not demonstrate a proper exercise of discretion because it failed to adequately explain its decision to revoke Daniels' li-

cense when the administrative law judge only recommended suspension. Second, the circuit court held that the Board denied Daniels due process because it did not allow him to appear before the Board (as opposed to the ALJ) regarding the proper sanction for his violations. We reverse the circuit court. The Board's written decision makes a reasoned justification of the sanction it selected, and also explains why it departed from the ALJ's recommendation, just as the statute requires. Further, Daniels' due process rights were satisfied in the proceeding before the ALJ; there is no statutory or constitutional right to a hearing before the Board as a whole, either in the first instance or on remand.

¶ 2. The proceedings that eventually gave rise to this appeal began in February 2004 when the Department of Regulation and Licensing filed a complaint against Daniels before the Board. The underlying facts, as found by the ALJ and adopted by the Board, showed four grounds for sanctioning Daniels: he was convicted of federal tax evasion (see WIS. STAT. § 446.03(3) (2005-06)[1]); he failed to notify the Board of his conviction (see § 446.03(5) and WIS. ADMIN. CODE § Chir 6.02(23) (Nov. 2006)[2]); he obtained compensation by fraud from patients (see § 446.03(5) and WIS. ADMIN. CODE § Chir 6.02(14)); and he failed to release patient records (see § 446.03(5) and WIS. ADMIN. CODE § Chir 6.02(28)). The ALJ recommended that Daniels' license be suspended for ninety days and that, on return to practice, he be supervised by another chiropractor and not be allowed to handle billing, among other conditions.

[1] All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.

[2] All references to the Wisconsin Administrative Code are to the November 2006 version unless otherwise noted.

¶ 3. The Board adopted all of the ALJ's findings of fact and conclusions of law, but decided to revoke Daniels' license, rather than suspend it. Daniels petitioned the circuit court for review only of the Board's decision to revoke his license. The court, the Honorable James Kieffer presiding, concluded that the Board had failed to adequately explain its decision to revoke Daniels' license, and had thereby failed to properly exercise its discretion. The circuit court therefore reversed and remanded to the agency. On remand, the agency issued a new decision which is identical in most respects to the original but contains a longer explanation of its decision to revoke Daniels' license. Daniels again petitioned for review, and the circuit court, the Honorable Mark Gempeler presiding, reversed the Board once more. The Board now appeals this second circuit court decision.[3]

¶ 4. Judicial review of a Board action is governed by WIS. STAT. ch. 227. *See* WIS. STAT. § 446.05(1). In a ch. 227 appeal, we review the agency's decision directly, not that of the circuit court. *See Stoughton Trailers, Inc. v. LIRC*, 2006 WI App 157, ¶ 15, 295 Wis. 2d 750, 721 N.W.2d 102, *aff'd*, 2007 WI 105, 303 Wis. 2d 514, 735 N.W.2d 477. The Board's factual findings are not at issue in this appeal, only whether the proceedings leading to the revocation of Daniels' license satisfied due process. This is a question of law that we review de novo. *See*

[3] Daniels is pro se on appeal and did not file a brief. We may, at our discretion, summarily reverse if the respondent fails to brief an appeal if we determine that he or she has abandoned the appeal or has acted egregiously or in bad faith. *See Raz v. Brown*, 2003 WI 29, ¶¶ 16–18, 260 Wis. 2d 614, 660 N.W.2d 647. We choose not to do so in this case.

*Homeward Bound Servs., Inc. v. Office of the Ins. Comm'r*, 2006 WI App 208, ¶ 39, 296 Wis. 2d 481, 724 N.W.2d 380.

¶ 5.   The circuit court found two faults with the Board's action in this case. First, it stated that "[u]pon remand, the Board simply supplemented its previous explanation with a similarly . . . lacking explanation for its decision to revoke Daniels' license." The circuit court further characterized the Board's written explanation as

> little more than a perfunctory embellishment of its first explanation . . . [which] does not engage in any meaningful discussion as to why suspension would not work aside from simply claiming that, based on the character traits of Daniels, it just wouldn't. Further the Board fails to address the ALJ's reasoning and proposed punishment and square its more extreme position with the ALJ's more moderate position.

■■■■

¶ 6.   Whether to revoke or suspend a chiropractor's license lies within the discretion of the Board. *See* Wis. Stat. § 446.03. "[D]iscretion is more than a choice between alternatives without giving the rationale or reason behind the choice." *Hacker v. DHSS*, 197 Wis. 2d 441, 478, 541 N.W.2d 766 (1995) (citation omitted). "Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning . . . . [T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." *Id.* (citations omitted). Further, under Wis. Stat. § 227.46(2), if the decision of the board varies in any respect from that of the ALJ, the decision is required to provide "an explanation of the basis for each variance." However, "[t]here is no requirement that the administrative agency indulge in the elaborate opinion procedure of an appellate court. It is

sufficient if the findings of fact and conclusions of law are specific enough to inform the parties and the courts on appeal of the basis of the decision." *State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 661, 275 N.W.2d 668 (1979).

¶ 7. Because the issue here is the adequacy of the Board's written explanation of its decision to revoke Daniels' license, we quote from it, in pertinent part, at some length:

> The Administrative Law Judge recommended a suspension of license for a short period with license limitations imposed upon reinstatement.
>
> The Board has determined that the violations proven warrant revocation . . . . Dr. Daniels' conviction was for tax evasion. The Division proved other instances of unprofessional conduct in practice, including fraud. The record suggests that the character trait that led to tax evasion also influenced Dr. Daniels in his chiropractic practice.
>
> . . . .
>
> . . . . [T]he violations proven reveal character traits, dishonesty and greed. If Dr. Daniels were to be permitted to continue practicing, he would continually be presented with opportunities to abuse his patient's trust and confidence for his own financial benefit.
>
> . . . .
>
> The character traits revealed by the unprofessional acts committed by the respondent appear to be so deeply rooted that no amount of supervision or oversight will adequately protect society. He was convicted of fraud, the elements of which require lying with the intent that others rely upon the lies to their detriment. He then failed to disclose the conviction to the Board. When confronted with this accusation he originally attempted to deceive by claiming that he thought his attorneys

492

had notified the Board. He continued his deceitful ways by seeking an extension of time to comply with the continuing education requirement by use of yet another deceitful tactic, claiming health related conditions. When confronted with this deceit he attempted to shift the blame by downplaying the seriousness of his conduct. This pyramid of lies and deceit indicate an unduly high risk of recidivism. Where the Board would like to see remorse and rehabilitation, it sees resentment and recrimination.

. . . .

The record here reveals that the respondent will engage in fraud and deceit to gain financial advantage and will engage in fraud and deceit to avoid responsibility for the original actions.

The respondent has demonstrated a character of dishonesty and greed directed at all who come in contact with him, whether patient, insurance company, the government or this Board. To request another chiropractor to monitor such a person . . . would require a Herculean task beyond the ken of any one person. In addition to catching the lies, merely confronting the respondent with the lie is not likely to result in corrective behavior but is likely to result in additional lies and deceit in an attempt to justify the inappropriate behavior.

██

¶ 8. Having examined this explanation, we are satisfied that it demonstrates a process of reasoning supported by evidence in the record. The Board noted that Daniels had committed repeated violations involving deception, two of which involved the fraudulent billing of patients for services they did not receive. Further, the Board pointed out that Daniels failed to accept responsibility for his violations, and was not

forthcoming in his dealings with the Board, particularly by attempting to mislead it about his conviction for tax evasion. From these findings, the Board concluded that Daniels demonstrated a high continuing risk for dishonest or fraudulent behavior. And because of Daniels' history of attempting to cover up his wrongdoing, the Board opined that having another chiropractor supervise Daniels would not sufficiently protect patients from future abuses, since it would be very difficult to monitor him closely enough to catch violations if he were attempting to avoid detection. The thoroughness and logic of the Board's explanation here stand in marked contrast to the "generic" explanation of variance we rejected in *Heine v. Chiropractic Examining Board*, 167 Wis. 2d 187, 192, 481 N.W.2d 638 (Ct. App. 1992).

¶ 9. We also conclude that the written decision sufficiently explains the Board's variance from the ALJ's recommendation. *See* Wis. Stat. § 227.46(2). The circuit court faulted the Board for failing to "square" its position with that of the ALJ. However, the decision acknowledges the ALJ's recommended sanction and explains why, in the Board's view, that sanction would not adequately protect future clients from abuses. The explanation is logical and based on the evidence in the record. It is not unassailable; one can read both the ALJ's decision and the Board's and find the ALJ's more convincing. But the Board is not required to present an airtight case, or to rhetorically demolish the recommendation of the ALJ, only to provide an "explanation of the basis for each variance." It is important to recall that the statute names the *Board* as the decision maker in discipline cases. Wis. Stat. § 446.03. The ALJ's role is to conduct the hearing and to present a *proposed* decision to the Board. Sec. 227.46(2). The ALJ's recommenda-

tions are not a final decision, and the Board owes no deference to the ALJ's recommended sanctions. Thus, unlike a circuit or appellate court reviewing the Board's decision, the Board does not have to demonstrate that the ALJ's conclusion is somehow "erroneous" to reach a different result; it must only explain, in a logical fashion based on the record, the reasons why it takes a different view.

¶ 10. As the reviewing court, our job is not to decide anew whether Daniels' license should be suspended or revoked. Even if we would not impose the same sanction, we must uphold the Board's decision if the Board provides a reasonable explanation for it based on the record. We conclude that it has done so.

¶ 11. The circuit court also found that the Board denied Daniels due process by not providing him with an opportunity to appear before the Board before issuing its decision after remand. The court also noted that in the initial proceeding (before the first judicial review), though Daniels had the opportunity to be heard before the ALJ, he was not given an opportunity to appear before the Board before it decided to revoke his license.

[11]

¶ 12. We cannot agree. With respect to the initial proceedings, in order to agree with the circuit court, we would have to declare the procedure laid out in Wis. Stat. ch. 227 unconstitutional, since it provides for no opportunity to be heard before the Board where, as here, a hearing examiner conducts the hearing. *See* Wis. Stat. § 227.46(2). What the statute directs is that each party have the "opportunity to file objections to the proposed decision, briefly stating the reasons and authorities for each objection, and to argue with respect to them before the officials who are to participate in the decision. The agency may direct whether such argu-

ment shall be written or oral." *Id.* Here, when the ALJ issued the proposed decision, Daniels was notified of his right to file a written response both to the proposed decision and to the Department of Regulation & Licensing's arguments for revocation. He apparently did so. The proceedings below thus complied with the statutory procedure.

¶ 13.   Nor have we found any cases questioning the constitutional propriety of this procedure. The circuit court cited *Bracegirdle v. Department of Regulation & Licensing*, 159 Wis. 2d 402, 417, 464 N.W.2d 111 (Ct. App. 1990), in which we stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her], notice and an opportunity to be heard are essential." However, Daniels *was* granted notice and an opportunity to be heard in person before the ALJ and in writing before the Board itself. In *Bracegirdle*, the administrative agency accepted the hearing examiner's finding that there was no credible evidence of the violation the respondent nurse was accused of—but then it amended the proposed decision to find that the nurse had committed a violation based upon different facts and a different theory of law. *Id.* at 410–11. Thus, the nurse had no opportunity to have any input into the agency's decision. *Bracegirdle* is simply inapposite to this case, since Daniels was informed of the violations alleged and had the opportunity to argue his case before the ALJ in person and before the Board via written submission.

¶ 14.   Finally, we do not see any reason why, if the above-described statutory procedure is appropriate for a decision in the first instance, more procedures would be required for the remand the circuit court directed in its first review. The circuit court did not, in its first

review, suggest that there was any problem with the findings of fact or conclusions of law reached by the Board; indeed, Daniels did not challenge either. The court did not suggest that other evidence needed to be collected or other issues explored. The basis for its reversal and remand was that the Board had failed to adequately explain its reasons for revoking Daniels' license. The court therefore directed the Board to explain itself, and we cannot understand why the Board would need additional testimony or argument from either party in order to do so. In fact, in *Heine*, after we determined that the Board's written decision did not show an adequate exercise of discretion, we rejected the idea that the case should go back before the hearing examiner and explicitly directed that the case be remanded "for the board to explain in detail why it varied from the sanctions recommended by the hearing examiner." *Heine*, 167 Wis. 2d at 193. There was no suggestion in that case that additional hearings or written submissions be required, and we conclude they were not necessary in this case either.

*By the Court.*—Order reversed.