XEROX CORPORATION, Petitioner-Appellant,†

v.

WISCONSIN DEPARTMENT OF REVENUE,
Respondent-Respondent,

CITY OF MILWAUKEE and City of La Crosse,
Intervenors-Respondents.

Court of Appeals

*No. 2007AP2884. Submitted on briefs November 12, 2008.
—Decided July 30, 2009.*

2009 WI App 113

(Also reported in 772 N.W.2d 677.)

† Petition to Review denied 12/14/09. Roggensack and Ziegler, JJ., dissents.

181

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Maureen A. McGinnity* of *Foley & Lardner LLP*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *F. Thomas Creeron III*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Vergeront and Curry, JJ.[1]

¶ 1. HIGGINBOTHAM, P.J. This is a personal property tax case. The issue is whether certain Xerox Corporation multifunction copier/printer/scanner/fax devices (MFDs) leased to consumers by Xerox are exempt from personal property taxes under WIS. STAT. § 70.11(39) (2007–08).[2] The Tax Appeals Commission concluded that the MFDs were nonexempt under the statute, and the circuit court agreed. Xerox appeals, contending that the Commission's decision is entitled to no deference and that the MFDs are not taxable under the applicable statutes. Xerox also contends it was denied due process as a result of alleged procedural errors below. We conclude, applying great weight deference, that the Commission's decision was based on a reasonable interpretation and application of § 70.11(39). We also reject Xerox's due process arguments. Accordingly, we affirm the circuit court's order affirming the Commission's order.

### BACKGROUND

¶ 2. The following facts are taken from the Commission's February 2005 and March 2007 decisions. Xerox filed property tax returns in 2001 with the cities

---

[1] Circuit Judge George Curry is sitting by special assignment pursuant to the Judicial Exchange Program.

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

of La Crosse and Milwaukee, reporting the MFDs at issue in this case as exempt. The cities separately issued notices to Xerox reclassifying the MFDs as nonexempt. Xerox appealed the property reclassifications with the State Board of Assessors. The Board of Assessors issued tax determinations granting Xerox's appeals in part, concluding that certain property was exempt, but that the MFDs were nonexempt. Xerox appealed the Board of Assessors determinations to the Tax Appeals Commission, which consolidated the appeals. The Department of Revenue was added as an intervening respondent; thus, the respondents on appeal to the Tax Commission were the Department of Revenue, the City of Milwaukee, and the City of La Crosse (collectively, the Department).

¶ 3. Commissioner Don Millis presided over an August 2003 hearing held in this matter. However, Millis left the Commission in July 2004 for a position with a private law firm before a decision was rendered.

¶ 4. In February 2005, the Commission issued a decision and order affirming the Board of Assessors determinations. The issue before the Commission was whether the MFDs should be classified as copiers and fax machines, which are not exempt from taxation under WIS. STAT. § 70.11(39),[3] or as computers, servers,

---

[3] WISCONSIN STAT. § 70.11 provides, as pertinent:

**70.11 Property exempted from taxation.** The property described in this section is exempted from general property taxes . . . . Property exempted from general property taxes is:

. . . .

**(39)** COMPUTERS . . . . mainframe computers, minicomputers, personal computers, networked personal computers, servers, terminals, monitors, disk drives, electronic peripheral equipment, tape drives, printers, basic operational programs, systems software, and prewritten software. The exemption under this section

188

electronic peripheral equipment and printers, which are exempt under the same statute. Applying § 70.11(39) to its findings of fact, the Commission concluded that Xerox did not meet its burden of establishing that the Board erroneously categorized the property at issue as nonexempt.

¶ 5. Xerox sought judicial review of the Commission's decision. Dane County Case No. 2005–CV-3250. Dane County Circuit Court Judge Sarah O'Brien concluded that the Commission failed to comply with a requirement under WIS. STAT. § 73.01(4)(b) that the commissioner presiding over a hearing "report" to the Commission, and remanded for the Commission to consult with former Commissioner Millis.

¶ 6. On remand, Millis reviewed the record and provided a memorandum to the Commission which included proposed revisions to the Commission's findings of fact. In a March 2007 decision, the Commission rejected Millis's proposed findings and stood by its original determination.

¶ 7. Xerox sought judicial review of the Commission's second decision by filing a renewed petition directly with Judge O'Brien. The Department objected to Xerox filing the renewed petition in Judge O'Brien's court, arguing that the petition should be treated as a new case, and therefore should have been filed in the clerk of courts office. In a May 15, 2007 order, Judge O'Brien agreed, and, again, the new case was

---

does not apply to custom software, fax machines, copiers, equipment with embedded computerized components or telephone systems . . . .

The statute in effect on the dates of the assessments is identical in its relevant provisions to the current version of the statute. *See* WIS. STAT. § 70.11(39) (1999–2000).

189

randomly assigned to Judge O'Brien. Dane County Case No. 2007–CV-1767. The Department then filed a request for substitution of judge. Xerox objected to the substitution request, and filed motions in Case Nos. 2005–CV-3250 and 2007–CV-1767 seeking reconsideration of Judge O'Brien's decision to treat the petition as a new action. Judge O'Brien did not rule on the motion for reconsideration, and the case was reassigned to Judge Angela Bartell. Judge Bartell subsequently issued an order upholding the Commission's February 2005 and March 2007 decisions. Xerox appeals.

## DISCUSSION

■

¶ 8. Xerox contends that the Commission erred in concluding that under Wis. Stat. § 70.11(39) certain MFDs leased by Xerox were nonexempt as copiers and fax machines, arguing that they are exempt as computers, servers, electronic peripheral equipment and printers. In an appeal following a decision of the Tax Appeals Commission, we review the Commission's decision, not the circuit court's. *Ho-Chunk Nation v. DOR*, 2009 WI 48, ¶ 12, 317 Wis. 2d 553, 766 N.W.2d 738.

¶ 9. In the discussion that follows, we begin by addressing two allegations of procedural unfairness brought by Xerox, and conclude that these allegations lack merit. Second, we summarize the Commission's factual findings. Third, we set forth the Commission's analysis and its conclusion that the MFDs at issue are nonexempt under Wis. Stat. § 70.11(39). Fourth, we address the parties' arguments regarding standard of review, and conclude that the Commission's interpretation and application of § 70.11(39) is entitled to great weight deference. Fifth, applying the great weight stan-

dard, we conclude that the Commission's determination that the MFDs at issue were exempt was based on a reasonable interpretation and application of WIS. STAT. § 70.11(39), and therefore affirm the circuit court's order upholding the Commission's decision.

## I. Alleged Procedural Errors

¶ 10. Xerox first argues that the Department should not have been allowed to substitute against Judge O'Brien in the circuit court. Xerox contends that Judge O'Brien erred in concluding that its renewed petition for review following remand was properly treated as a new petition, noting that the cases on which Judge O'Brien relied involved issues of jurisdiction and not judicial assignment. The Department responds that Xerox has forfeited[4] this argument, and that Xerox should have sought a supervisory writ to prohibit Judge Bartell from presiding over the renewed petition, but failed to do so. *See State ex rel. Town of Delevan v. Circuit Court for Walworth County*, 167 Wis. 2d 719, 721 and n. 2, 482 N.W.2d 899 (1992) (petitioner in a judicial review of an agency decision filed a supervisory writ to prevent the circuit court judge from taking further action and to direct the court to rule on a motion for judicial substitution). We agree with the Department.

---

[4] The Department uses the term "waived," but "forfeited" is more appropriate here. *See State v. Ndina*, 2009 WI 21, ¶ 29–30, 315 Wis. 2d 653, 761 N.W.2d 612 (noting that forfeiture is the failure to make the timely assertion of a right, while waiver is the intentional relinquishment or abandonment of a known right) (citation omitted).

¶ 11. We conclude that Xerox forfeited its challenge to the judicial substitution by failing to appeal Judge O'Brien's order granting the Department's request that the renewed petition be filed as a new petition in the clerk of courts' office, and by failing to seek a supervisory writ to stay the proceedings before Judge Bartell. Moreover, even if it had not forfeited this argument, we fail to perceive how Xerox might have been harmed by the alleged error, given that our review is of the agency's decision, not the circuit court's. *See PRN Assoc. LLC v. DOA*, 2008 WI App 103, ¶ 12, 313 Wis. 2d 263, 756 N.W.2d 580 (court of appeals reviews decision of agency, not that of circuit court, in an administrative review).

¶ 12. In its second claim of procedural error, Xerox contends that it was denied due process by the Department's rejection of former Commissioner Millis's revised proposed factual findings following the circuit court's remand for the Commission to consult with Millis. Whether a party was afforded due process is a legal question that we review de novo. *See Daniels v. Wisconsin Chiropractic Examining Bd.*, 2008 WI App 59, ¶ 4, 309 Wis. 2d 485, 750 N.W.2d 951. The present issue also involves statutory interpretation and the scope of the Commission's authority, matters of law subject to independent review. *See Sands v. Whitnall Sch. Dist.*, 2008 WI 89, ¶ 14, 312 Wis. 2d 1, 754 N.W.2d 439; *Albrechtsen v. DWD*, 2005 WI App 241, ¶ 8, 288 Wis. 2d 144, 708 N.W.2d 1.

¶ 13. The circuit court concluded that the Commission failed to comply with the procedural requirement of WIS. STAT. § 73.01(4)(b), which "impaired the correctness of the proceeding and the correctness of the

action." Section 73.01(4)(b) requires that a hearing examiner or commissioner hearing a matter must "report" to the Commission. The statute provides in pertinent part:

> Any matter required to be heard by the commission may be heard by any member of the commission or its hearing examiner and reported to the commission, and hearings of matters pending before it shall be assigned to members of the commission or its hearing examiner by the chairperson.

Sec. 73.01(4)(b). The procedural failure identified by the circuit court was that the Commission did not "consult" with Commissioner Millis prior to issuing its decision. Judge O'Brien concluded that the reporting requirement in § 73.01(4)(b) "requires the presiding commissioner to report his findings and observations to the non-present commissioners where issues of credibility, the weight of the evidence, and the drawing of factual inferences are involved." Applying that test to the instant facts, Judge O'Brien concluded that the Department failed to satisfy this requirement and, pursuant to WIS. STAT. § 227.57(4),[5] remanded to the Commission to do so.

¶ 14. On remand, Millis reviewed the record and provided the Commission with a memorandum proposing significant revisions to the factual findings of the February 2005 decision. Millis's proposed findings departed significantly from the Commission's original findings—so much so that the Commission concluded

---

[5] WISCONSIN STAT. § 227.57(4) provides: "The court shall remand the case to the agency for further action if it finds that either the fairness of the proceedings or the correctness of the action has been impaired by a material error in procedure or a failure to follow prescribed procedure."

that the adoption of all of Millis's findings would have required reversal of the Commission's original holding. In a detailed thirteen-page decision, the Commission rejected Millis's findings, concluding as follows: (1) the requirement of WIS. STAT. § 73.01(4)(b) that the hearing examiner "report" to the Commission is minimal; (2) Millis's findings did not involve credibility determinations, and therefore Millis was in no better position than the Commission to render a decision; (3) to the extent that Millis's findings arguably involved credibility determinations, the Commission was free to reject them as long as it provided reasons for doing so; (4) the Commission's decision not to adopt every undisputed fact in its findings did not reflect credibility determinations; (5) many of Millis's proposed findings were actually conclusions of law, including that the MFDs were not "copiers" under WIS. STAT. § 70.11(39); (6) many of the proposed findings were irrelevant; and (7) even if the Commission adopted all of Millis's findings—except those that were actually conclusions of law—its decision would not change.

¶ 15. On appeal, as before, Xerox argues that the fairness of the proceedings and the correctness of the Commission's decision was impaired because the Commission did not give appropriate weight to Millis's proposed findings of fact. Xerox suggests that the Commission was required to adopt Millis's factual findings because they involved credibility determinations, weighing of evidence, or drawing factual inferences from the credible evidence. We disagree.

¶ 16. As noted, WIS. STAT. § 73.01(4)(b) requires only that the commissioner or hearing examiner presiding over the hearing "report" to the Commission following the hearing. The statutory language does not

194

specify what is sufficient to fulfill this requirement, and we need not precisely define this requirement here. It is sufficient for our purposes to conclude, applying the de novo standard appropriate to an issue involving the scope of the Commission's authority, that the Commission fulfilled the statute's reporting requirement by receiving Millis's memorandum, considering his proposed findings of fact, and providing reasons for its rejection of the proposed findings. *Cf. Neu's Supply Line, Inc. v. DOR*, 52 Wis. 2d 386, 395, 190 N.W.2d 213 (1971) ("In this case one member of the commission . . . was present at the hearing, and the entire commission signed the decision and order. That is all that the statute [§ 73.01(4)(b)] requires.").

¶ 17. To the extent that Xerox argues that the reporting requirement of WIS. STAT. § 73.01(4)(b) mandates that the Commission adopt Millis's proposed findings of fact where credibility determinations are at issue, that is not the law in Wisconsin. As the Commission aptly noted in its March 2007 decision, it is the ultimate finder of fact, and it may decline to adopt a commissioner's or hearing examiner's determinations of witness credibility so long as it explains its decision. WIS. STAT. § 73.01(4)(a) ("[T]he commission shall be the final authority for the hearing and determination of all questions of law and fact . . . ."); *Hakes v. LIRC*, 187 Wis. 2d 582, 589, 523 N.W.2d 155 (Ct. Ap. 1994) (noting that a hearing examiner's initial determinations of witness credibility are subject to independent review by the commission). Moreover, to the extent credibility determinations were relevant here, we agree with the assertion in the Commission's March 2007 decision that it was in as good a position as Millis to make such determinations, given that Millis prepared his memo-

randum to the Commission more than three and one-half years after the August 2003 hearing.

## II. The Commission's Findings of Fact

¶ 18. The Commission made the following findings of fact, which are taken largely verbatim from its February 2005 decision.

¶ 19. The MFDs at issue consist of Xerox's Document Centres and WorkCentres product lines, which Xerox leases to a large number of lessees in the La Crosse and Milwaukee areas. Document Centres are large, floor-standing machines with either physically separate scanners and printers connected by a cable, or scanners and printers integrated in a single housing. Document WorkCentres are smaller, desktop devices in which the printer, scanner, and fax components are preconfigured as a part of a single unit. Document WorkCentres lack the option of adding peripherals. Highlights of the Commission's detailed findings regarding the functions and appearance of the Document Centre and Document WorkCentre lines are provided below.

## A. Document Centres

¶ 20. There are two types of Document Centres: those with a "DC" suffix in the model number and those with an "ST" suffix in the model number. ST Document Centre systems are designed to make copies of a document by either walking up to the machine and physically scanning the original in the same manner as the DC Document Centres, or by electronically inputting data to be copied through a connection to either a personal computer or a computer linked to a local area computer network.

196

¶ 21. The main components of an ST Document Centre are the scanner, main controller, network controller, printer/copier, and other various optional accessories. The scanner is a physically separate device connected to the main controller and printer by a cable connection. In some models the scanner is integrated with the main controller and printer in a single housing. The main controller, as described by an expert employed by Xerox, is an onboard computer which consists of a multifunction system board providing memory management for digital image storage capabilities, a main controller unit, and, in some models, a hard drive. The main controller uses the same random access memory (RAM) as other computers. According to the expert, the network controller is a second, independent onboard computer which consists of either a Motorola PowerPC or Intel main control board, a PowerPC 100, megahertz processor, standard memory, a floppy disc drive, and a hard drive.

¶ 22. DC Document Centres have the same components as ST Document Centres except they do not have the network controller installed and therefore cannot be connected to a personal computer or a computer network.

¶ 23. Xerox categorizes the DC and ST Document Centres in the following "families of computers" to denote different product features. Within each family, the primary difference between model numbers is speed. DC Document Centres, Models 220 and 230, are characterized by split components with a physically separate scanner connected to a printer/copier by a cable. These models, as well as DC Models 240, 255 and 265, are described as "digital copiers" in Xerox's promotional materials. DC Models 420, 432, 440, 460 and 470 are described in a brochure as a "DIGITAL COPIER

AND SYSTEM." Another brochure describes DC Models 332 and 340 as "DIGITAL COPIER[S]/SYSTEM[S]." ST Models 220 and 230 are described as "true digital copiers" in a Xerox brochure.

¶ 24. The physical appearance of the Document Centres is relatively standard for most copiers, i.e, they have a flip-up cover, various bins for different paper sizes, touch pad controls, and sorting bins.

¶ 25. The different models of the DC and ST Document Centres essentially function in the same manner. When a document is scanned into either a DC or ST model Document Centre, the data is stored in the memory of the main controller in the Document Centre. The main controller can manipulate data to change the desired output without the influence of a personal computer. For example, once the data has been stored, a command on the control panel of the Document Center can be selected and the stored data is then manipulated to perform the function of the command selected. Xerox's expert testified that the DC and ST Document Centres would not be able to perform their basic functions without the main controller because such data manipulation and storage requires the computing resources of the main controller.

¶ 26. The Intel network controller onboard the 470ST model Document Centre can run operating systems and software packages such as Microsoft Windows, which can be installed on the hard drive of the network controller. With Microsoft Windows installed on this model, the Document Centre can be used for basic word processing functions, and by adding an off-the-shelf video card and connecting a mouse, keyboard, and monitor to the network controller, the Document Centre has all the same components as a personal home computer.

## B. Document WorkCentres

¶ 27. Document WorkCentres, like Document Centres, have scanners, a main controller, and printers/copiers. WorkCentres perform similarly to Document Centres in terms of their basic function of scanning input, processing the data via the main controller, and delivering output through the printer/copier. Some WorkCentres can be connected to an outside network computer to allow electronic input between the main controller and the network computer.

¶ 28. The WorkCentre 545, as stated on its brochure, is "[t]he low-cost, multifunction business Fax that lets you print, copy and scan with laser quality and speed." The inside of the brochure reads: "At last, a compact multifunction Fax system that gives you professional office productivity at a personal price."

¶ 29. The WorkCentre Pro 635, as advertised on the cover of its brochure, is "[a]n affordable fax system that brings superior fax capabilities to your business and much more . . . . [E]veryone in your office can take advantage of the full-featured fax that provides solutions to most business needs."

¶ 30. The cover of the WorkCentre Pro 645 brochure describes the model as "[a] powerful fax system that delivers exceptional productivity now . . . . From sending and receiving thousands of faxes every month to fast scanning, printing and copying, this is one full-featured system designed to meet the needs of demanding businesses . . . ."

¶ 31. The WorkCentre Pro 657 is described as "a high-performance fax system that features the newest technology to handle the most demanding workloads." The brochure for the Pro657 states: "Today's busy workgroups need a high-speed way to keep up with the

thousands of faxes every month . . . . The Document WorkCentre Pro 657 gives you the fastest, most advanced fax transmission technologies available."

### C. Additional Testimony of Xerox's Experts

¶ 32. The Commission noted certain testimony of Xerox's experts, but declined to adopt the experts' testimony in its findings. The Commission noted that one Xerox expert testified that, within the document processing industry, the term "copier" refers to

> a machine that uses a process whereby an original document is placed on a glass or fed through a document feeder, the image is projected through a series of mirrors and lenses onto a drum or photoreceptor surface, and that projected image is then transferred onto paper without any conversion or manipulation of the image. Copies are made by taking pictures of the original document. Such copiers are also referred to in the document processing industry as optical copiers, analog copiers, or photocopiers. These copiers are not connected to or operated by computers and do not use electronics for image processing at any stage of the copying.

The expert also testified that the term "digital copier" refers to

> a device that uses electronic processing to improve the image the photoreceptor sees, thereby producing sharper color images than optical copiers. In a digital copier, a document is scanned by a raster scanner, which 'rasterizes' the data, *i.e.,* converts it to a pixel-by-pixel description of the lightness and darkness across a page and then to digital 1's and 0's. The raster scanner is directly connected to a raster printer which prints the scanned data the same way it is received, without any manipulation.

200

Under these definitions, the expert testified that the MFDs are not copiers or digital copiers, notwithstanding the use of those terms in Xerox's marketing brochures. The expert testified that, in contrast to the copying described above, the MFDs do not create copies but, rather, "print[] fresh, unique images from digital representations," like a printer.

¶ 33. The fax function for the WorkCentres is provided by a physical card that is embedded in the main controller. A Xerox expert testified that because the fax card is controlled and operated by the main controller, the fax component is an electronic peripheral. He further testified that the WorkCentres are MFDs with fax capabilities, not fax machines.

### III. Summary of the Commission's Analysis and Conclusions of Law

¶ 34. The Commission's analysis begins with the relevant language of WIS. STAT. § 70.11 and some basic principles applicable to tax exemption claims.

> **70.11 Property exempted from taxation**. The property described in this section is exempted from general property taxes . . . . Property exempted from general property taxes is:
>
> . . . .
>
> **(39)** COMPUTERS . . . . mainframe computers, minicomputers, personal computers, networked personal computers, servers, terminals, monitors, disk drives, electronic peripheral equipment, tape drives, printers, basic operational programs, systems software, and prewritten software. The exemption under this section does not apply to custom software, fax machines, copi-

ers, equipment with embedded computerized components or telephone systems.

Tax exemption statutes are to be strictly construed against granting an exemption. *Pabst Brewing Co. v. Milwaukee*, 125 Wis. 2d 437, 445, 373 N.W.2d 680 (Ct. App. 1985). All presumptions are against exemption, and exemptions should not be extended by implication. *See Wrase v. City of Neenah*, 220 Wis. 2d 166, 171, 582 N.W.2d 457 (1998). Assessments made by the Department of Revenue are presumed correct, and the burden is on the petitioner to prove by clear and satisfactory evidence in what respects the Department erred in its determination. *Edwin J. Puissant, Jr. v. DOR*, Wis. Tax Rptr. (CCH) ¶ 202–401 (WTAC July 5, 1984).

¶ 35. The Commission proceeded to Xerox's first argument. Xerox contended that because WIS. STAT. § 70.11 does not define the relevant terms in § 70.11(39), the Commission must use the definitions of the terms provided by experts familiar with the industry, citing *H. Samuels Co. v. DOR*, 70 Wis. 2d 1076, 1085, 236 N.W.2d 250 (1975). Xerox argued that, because the Department did not dispute the testimony of its industry experts that the MFDs fell within their definitions of computer, server, printer and electronic peripheral equipment (exempt) and outside of their definitions of copier and fax machine (nonexempt), the MFDs were exempt.

¶ 36. The Commission observed that *H. Samuels* addressed whether a process constituted "manufacturing" under WIS. STAT. § 77.51(27) (1973). *H. Samuels* concluded that whether a process was manufacturing "can only be applied with reference to the opinions of those conversant with the subject matter involved." *H. Samuels*, 70 Wis. 2d at 1085–86. The Commission con-

cluded that *H. Samuels* did not apply in this case, and that broad application of *H. Samuels* would be contrary to the following principle of statutory interpretation: "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning." WIS. STAT. § 990.01(1). Applying this rule of construction, the Commission concluded that the words as used in the statute (i.e., "fax machine," "copier," etc.) were not technical words, and therefore rejected Xerox's argument that the undisputed industry definitions provided by its experts should apply.

¶ 37. The Commission concluded that Xerox did not meet its burden of establishing that the MFDs qualified as a tax exempt computer, server, printer or electronic peripheral equipment within the meaning of WIS. STAT. § 70.11(39), and that it had failed to overcome the Department's determination that the Document Centres were nonexempt copiers and the Document WorkCentres were nonexempt fax machines.

¶ 38. The Commission considered Xerox's marketing materials and the physical appearance of the Document Centres. The Commission noted that the "unmistakable overall effect, both in terms of the equipment's description [in the marketing materials] and appearance is to convey that the Document Centres are [nonexempt] copiers." The Commission noted that the Document Centres had a flip-up cover, various bins for different paper sizes, touch pad controls and sorting bins, consistent with the standard appearance of copiers. The Commission noted that the marketing materials, while sometimes employing the words "system," "document services," "printer," and "scanner," often refer

203

to the equipment as "copier[s]," "digital copier[s]," "Digital copier[s]/System[s]," and "Digital copier[s] and system[s]." The Commission also considered the marketing materials and physical appearance of the Document WorkCentres. It noted that the materials repeatedly refer to the WorkCentre models as "fax machines."

¶ 39. The Commission reviewed the dictionary definitions of "copier" and "printer" in considering whether the Department had properly classified the Document Centres as nonexempt copiers. The Commission referenced two dictionary definitions of "copier" provided by the Department: (1) "An office machine that makes copies of printed or graphic material," from THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed.); and (2) "a duplicating machine," from WEBSTER'S NEW WORLD DICTIONARY 2d college ed.). The Commission then provided the dictionary definitions of "printer" cited by Xerox, two of which follow: "3. *Computer Science.* The part of a system that produces printed matter," AMERICAN HERITAGE DICTIONARY (3d ed. 1989); "a computer peripheral designed to print computer-generated text or graphics on paper or other physical media," WEBSTER'S NEW WORLD DICTIONARY OF COMPUTER TERMS (7th ed. 1999).

¶ 40. The Commission rejected Xerox's argument that the definitions of copier were so broad as to cover printers. The Commission concluded that, based on the dictionary definitions, the terms were distinguishable from one another: "While printers produce printed or graphic material, they do not 'make[] copies of printed or graphic material.' " The Commission concluded that the dictionary definitions of

> "copier" and "printer" indicate that a copier is a piece of equipment that makes a copy of an original, whereas a

204

printer is part of a system that produces an original document from computer-generated images. When the equipment at issue is reproducing a hard copy of a document rather than reproducing the images on a computer, it is not creating an original but is acting as a copier.

¶ 41. Xerox argued to the Commission that the MFDs were exempt because all consist of "computers," which are generally exempt under WIS. STAT. § 70.11(39). The Commission rejected this argument, noting that the language of the statute specifically exempts certain types of computers, including "mainframe computers," "minicomputers," "personal computers," and "networked personal computers," not computers in general. The Commission noted that, while subsection (39) is entitled "computers," the title of a statutory section is not a part of the statute and it cannot prevail over the language of the section under WIS. STAT. § 990.001(6), and Xerox did not argue that the MFDs are "mainframe computers," "minicomputers," "personal computers," and "networked personal computers."

¶ 42. The Commission concluded that for equipment to be exempt under WIS. STAT. § 70.11(39) it must be one of the exempt items listed in the statute, and not just contain a statutorily exempt item. The Commission held:

> [T]o be exempt under § 70.11(39), it is not sufficient to demonstrate that the equipment *contains* a statutorily exempted item; rather, it must be shown that the equipment *is* an exempted item. Thus, if the MFD is a copier or a fax machine, the fact that it may contain some exempt item such as a server, one of the enumerated computers, or some other exempt device does not make the MFD as a whole exempt. Because the Com-

205

mission concludes that the Department properly classified the Document Centres as copiers and the Work-Centres as fax machines, that classification does not change because the copiers or fax machines are technologically enhanced with exempt devices.

¶ 43. Xerox argued that the MFDs were exempt as an " 'all-in-one' printer/scanner/fax/copier" under the Computer Exemption Guidelines to the 1999 WISCONSIN PROPERTY ASSESSMENT MANUAL, which describes these items as a "combination device that includes an exempt device." 1 WISCONSIN PROPERTY ASSESSMENT MANUAL, Miscellaneous, Computer Exemption Guidelines (Oct. 2000). The comments to the Guidelines state that "all-in-one" devices are "Electronic Peripheral Equipment—Exempt provided the device is connected to and operated by a computer."[6]

¶ 44. The parties agreed that, under the Computer Exemption Guidelines, an "all-in-one" device that is able to function without being "connected to and operated by a computer" is not exempt as electronic peripheral equipment under the Guidelines. They disagreed over what type of computer was required by the

─────────

[6] The Commission noted that the 2003 Guidelines were revised to state that "all-in-one" devices are "Taxable," but expressed the view that the test for determining the exemption status of these devices remains the same. 1 WISCONSIN PROPERTY ASSESSMENT MANUAL, Miscellaneous, Computer Exemption Guidelines (2003). The 2003 comments explain: "If this equipment can _only_ operate using a computer, it is exempt as an electronic peripheral." _Id._ The Commission expressed the view the test under the 2003 Guidelines for determining whether an "all-in-one" device is exempt remains as follows: The device is exempt as an electronic peripheral if it can operate only with an external computer; it is nonexempt if it can operate without being connected to an external computer.

rule. Arguing that all of the MFDs contain an internal computer (a main controller or a network controller), Xerox contended that the MFDs were exempt. The Department argued that, assuming that the main controllers and network controllers are computers, the computer contemplated by the Guidelines must be an external computer, and, because the MFDs are capable of functioning without an external computer, they were properly classified as nonexempt under the Guidelines.

¶ 45. The Commission concluded that Xerox failed to rebut the Department's position that the computer must be an external computer for the "all-in-one" devices to be considered exempt electronic peripheral equipment under the Guidelines. The Commission concluded that, while the MFDs may have *contained* an electronic peripheral, they *were not* exempt electronic peripherals. The Commission agreed with a Department expert who, interpreting the Guideline provision that only "all-in-one" devices connected to a computer are exempt, testified that the connecting computer referenced in the provision must be one of the type listed as exempt under WIS. STAT. § 70.11(39)— "mainframe computers, mini-computers, personal computers, and networked personal computers."

### IV. Standard of Review Applicable to the Commission's Determination that the MFDs are Nonexempt Devices under WIS. STAT. § 70.11(39)

¶ 46. Xerox argues that the agency's determination that the MFDs are nonexempt was based on an erroneous interpretation and application of WIS. STAT. § 70.11(39). As a general matter, the interpretation of a statute and its application to an undisputed set of facts

is a question of law that we review de novo. *WIREdata, Inc. v. Village of Sussex*, 2008 WI 69, ¶ 45, 310 Wis. 2d 397, 751 N.W.2d 736. However, when reviewing an agency's interpretation or application of a statute, we apply one of three levels of review: great weight, due weight, or de novo deference. *DOR v. Gagliano Co., Inc.*, 2005 WI App 170, ¶ 22, 284 Wis. 2d 741, 702 N.W.2d 834. The parties dispute the level of deference we should give to the Commission's interpretation and application of § 70.11(39).

¶ 47. An agency's interpretation and application of a statute to a given set of facts is accorded great weight deference when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995). Great weight deference is also applied to an agency's interpretation "if it is intertwined with value and policy determinations inherent in the agency's statutory decisionmaking function." *Barron Elec. Co-op. v PSC*, 212 Wis. 2d 752, 761 and n.5, 569 N.W.2d 726 (Ct. App. 1997) (citation omitted); *see also Milwaukee Bd. of Sch. Dirs. v. WERC*, 2008 WI App 125, ¶ 8, 313 Wis. 2d 525, 758 N.W.2d 814; *City of Oak Creek ex rel. Water and Sewer Utility Comm'n v. PSC*, 2006 WI App 83, ¶ 14, 292 Wis. 2d 119, 716 N.W.2d 152. Under the great weight standard, we will uphold an agency's interpretation and application of a statute as long as it is reasonable and not contrary to the clear meaning of the applicable statutes, even if another

conclusion is more reasonable. *Gilbert v. LIRC*, 2008 WI App 173, ¶ 9, 315 Wis. 2d 726, 762 N.W.2d 671.

■■■

¶ 48. Due weight deference is appropriate when "an agency has some experience in the area, but has not developed any particular expertise in interpreting and applying the statute at hand that would put the agency in a better position to interpret the statute than a reviewing court." *Stoughton Trailers, Inc. v. LIRC*, 2007 WI 105, ¶ 28, 303 Wis. 2d 514, 735 N.W.2d 477 (citation omitted). Under the due weight standard, we will uphold the agency's interpretation and application of a statute if it is reasonable and comports with the purpose of the statute, and no other interpretation is more reasonable. *Gilbert*, 315 Wis. 2d 726, ¶ 9. De novo deference "is appropriate when the issue is a matter of first impression or when the agency's position has been so inconsistent as to provide no real guidance." *Id.*

■■■

¶ 49. Xerox argues that our standard of review is de novo, contending that the Commission did not employ expertise or specialized knowledge in applying WIS. STAT. § 70.11(39). Xerox argues that the Commission has no particular expertise in differentiating between servers, printers and electronic peripheral equipment on the one hand, and copiers and fax machines on the other. The Department argues that the Commission's interpretation and application of § 70.11(39) is entitled to great weight deference because each of the four criteria set forth in *Harnischfeger* is satisfied. We agree with the Department.

¶ 50. We conclude that the first and fourth *Harnischfeger* criteria are clearly satisfied; the legislature has charged the Commission with reviewing decisions of the State Board of Assessors, *see* WIS. STAT.

§ 73.01(5)(a), and its interpretation will encourage uniformity and consistency in the application of Wis. Stat. § 73.11(39).

¶ 51. Regarding the third prong of the *Harnischfeger* test, Xerox contends, as we have noted, that the Commission's interpretation is not entitled to deference because the Commission has no particular expertise in differentiating among servers, printers and electronic peripheral equipment, on the one hand, and copiers and fax machines, on the other. Xerox's expectation that the Commission should have expertise in computers is unreasonable. This prong does not demand expert knowledge about the particular kind of property at issue, whether it be, as here, computer equipment, or perennial plants (exempt under Wis. Stat. § 70.11(30)) or historic properties (exempt under § 70.11(34)). Rather, the prong is satisfied if the agency has developed expertise interpreting and applying *the statute* at issue. *See Michels Pipeline Const. v. LIRC*, 2008 WI App 55, ¶ 10, 309 Wis. 2d 470, 750 N.W.2d 485. We are satisfied that the Commission has sufficient experience interpreting and applying § 70.11 to fulfill this prong. *See, e.g. Video Wisconsin, Ltd. v. DOR*, 175 Wis. 2d 195, 498 N.W.2d 880 (Ct. App. 1993); *DOR v. Cardox Corp.*, No. 93–0029, unpublished slip op. (Wis. Ct. App. Apr. 21, 1994).

¶ 52. Regarding the second factor, Xerox argues that the agency's interpretation cannot be one of "longstanding" because this is the first time the Commission has considered whether the MFDs at issue are nonexempt copiers and fax machines under Wis. Stat. § 70.11(39) or exempt computers, servers, electronic peripheral equipment and printers under the statute. Xerox is correct that the agency had not previously considered whether these or other "all-in-one"

210

copier/printer/scanner/fax devices are exempt under § 70.11(39). We nonetheless conclude that the second factor is satisfied in light of the case law applying the "long-standing" requirement.

¶ 53. In *Gagliano*, we concluded that a Commission determination that a technologically sophisticated fruit-ripening facility was manufacturing property under WIS. STAT. § 70.995 was entitled to great weight deference, despite the fact that the Commission had not previously applied WIS. STAT. § 70.995 to any type of fruit- or vegetable-ripening facility. *Gagliano*, 284 Wis. 2d 741, ¶¶ 26, 29–30. Following a long line of cases,[7] we concluded that the "long-standing" requirement "does not require that an agency has previously applied a statute to the same or substantially similar facts." *Id.*, ¶ 28 n.9

¶ 54. We conclude that the Commission's interpretation and application of WIS. STAT. § 70.11 in determining whether particular personal property is exempt from taxation is undoubtedly of "long-standing." *See, e.g. Video Wisconsin, Ltd.*, 175 Wis. 2d 195; *Cardox Corp.*, No. 93–0029, unpublished slip op. In determining whether the particular devices at issue were exempt under § 70.11(39), the Commission employed its specialized knowledge and expertise in interpreting and applying the tax exemption statute. *See Gagliano*, 284 Wis. 2d 741, ¶ 29 (interpretation of WIS. STAT. § 70.995

---

[7] *See, e.g. Wisconsin Bell, Inc. v. PSC*, 2004 WI App 8, ¶¶ 17–19, 269 Wis. 2d 409, 675 N.W.2d 242, *aff'd by an equally divided court*, 2005 WI 23, 279 Wis. 2d 1, 693 N.W.2d 301; *Virginia Sur. Co. v. LIRC*, 2002 WI App 277, ¶ 13, 258 Wis. 2d 665, 654 N.W.2d 306; *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 764, 569 N.W.2d 726 (Ct. App. 1997); *Citizens' Utility Bd. v. PSC*, 211 Wis. 2d 537, 551–52, 565 N.W.2d 554 (Ct. App. 1997).

entitled to great weight deference where Commission was called upon to apply its expertise and specialized knowledge).

¶ 55. We therefore conclude that the Commission's determination that the MFDs are nonexempt under Wis. Stat. § 70.11(39) is entitled to great weight deference because the Commission was charged by the legislature with the duty of administering Wis. Stat. § 70.11, its interpretation will provide uniformity and consistency in the application of the statute, it employed its expertise or specialized knowledge in forming its interpretation, and its interpretation of § 70.11(39) is one of "long-standing" within the meaning of the case law. For similar reasons, we conclude that the agency's interpretation of provisions of the WISCONSIN PROPERTY ASSESSMENT MANUAL supplementing § 70.11(39) are entitled to great weight deference. *See Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 90 and n. 10, 591 N.W.2d 583 (1999) (applying deferential review to Department's interpretation of provisions in ASSESSMENT MANUAL relating to tax exemptions because agency has special expertise in this area and has been charged with administering Wis. Stat. § 70.11).

### V. *Reasonableness of Commission's Determination that the MFDs are Nonexempt Items under Wis. Stat. § 70.11(39)*

¶ 56. Having concluded that the Commission's decision is entitled to great weight deference, our review is limited to the reasonableness of the Commission's determination. Thus, applying the great weight deference standard, we will uphold its interpretation and application of Wis. Stat. § 70.11(39) if it is

reasonable, even if a more reasonable interpretation exists. *Stoughton Trailers, Inc.*, 303 Wis. 2d 514, ¶ 55.

¶ 57. Xerox's primary argument focuses on the Commission's rejection of its experts' definitions of "copier," "fax machine," "server," "electronic peripheral equipment" and "printers," terms not defined by the statute. Xerox notes that the Department did not introduce testimony from experts within the industry to contradict the definitions of Xerox's experts.

¶ 58. The main problem with this argument is that Xerox views the question of whether the equipment is a "copier," "fax machine," or the like as a factual one "that turns on how the equipment operates." We agree that the question of how the equipment operates is a question of fact. However, the ultimate classification of this equipment as a "copier," fax machine," or other computer-related item listed in WIS. STAT. § 70.11(39) is a question of law. Moreover, the Commission may reject the testimony of an expert witness, *see E. F. Brewer Co. v. DILHR*, 82 Wis. 2d 634, 636–37, 264 N.W.2d 222 (1978), as it rejected the testimony of Xerox's experts here. Whether a particular set of facts satisfies a legal standard is a question of law that is decided not by expert witnesses, but by the Commission. *See Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 598, 286 N.W.2d 540 (1979) (an agency's findings regarding expert testimony are conclusive). As the Commission appropriately maintains, it is "not bound by definitions provided by [Xerox's] experts or the experts' views of which statutory terms best describe the property." *Xerox Corp. v. DOR*, Wis. Tax. Rptr. (CCH) ¶ 400–919 (Dane Co. Cir. Ct. 2006).

¶ 59. Xerox argues that the computer terms provided in WIS. STAT. § 70.11(39) are technical terms and that, because the statute does not define these terms,

the Commission erred by disregarding the definitions of these terms offered by its experts. In the same vein, Xerox maintains that the Commission's reference to dictionary definitions of these terms was unreasonable because of the technical nature of the equipment and therefore, while the average person may be familiar with terms such as "copier" and "printer," it does not follow that they are able to distinguish the difference between them on any principled basis. Xerox points out that the definitions of the computer terms offered by its experts are consistent with those published in specialized computer dictionaries introduced by Xerox.

¶ 60. In support, Xerox relies on *H. Samuels*. The question in *H. Samuels* was whether a taxpayer's business of converting scrap metal into prepared grades of iron and steel was exempt as "manufacturing," defined under the version of Wis. Stat. § 70.11 then in effect as "the production by machinery of a new article with a different form, use and name from existing materials by a process popularly regarded as manufacturing." *H. Samuels*, 70 Wis. 2d at 1079, 1084. In construing the meaning of "manufacturing" under the statute, the Commission interpreted the phrase "popularly regarded" to mean in the view of an average person, and rejected the testimony of several experts presented by the taxpayer. *Id.* at 1081–82. The court in *H. Samuels* disagreed with the Commission, and concluded that the phrase "process popularly regarded as manufacturing" could "only be applied with reference to the opinions of those conversant with the subject matter involved." *Id.* at 1085–86. In other words, the court concluded that the Commission improperly construed the statutory language based on a "man on the street" definition because the scrap metal converting process was too technical for any person other than an expert to define. *Id.* at 1086.

¶ 61. We conclude that the Commission reasonably relied on nontechnical definitions of the statutory terms set forth in WIS. STAT. § 70.11(39) and that it was reasonable for the Commission to ignore the definitions offered by Xerox's experts. After observing that the computer-related terms in § 70.11(39) were not defined in the statutes, the Commission resorted to dictionary definitions to discern the legislature's intent. This is a well-established practice in statutory interpretation. *See DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 46, 299 Wis. 2d 561, 729 N.W.2d 396. Construing § 70.11(39), the Commission aptly noted that the terms at issue "are within the common lexicon, familiar to most people." The Commission further observed that the statute had a "more colloquial than technical tone," noting the use of "fax machine" rather than the more formal and technical "facsimile machine." The Commission reasonably observed that most people are familiar with such computer-related terms. Based on these observations, the Commission reasonably concluded that the computer terms at issue are not technical, and reasonably applied the general rule of construing the language in accord with its common and approved usage. *See* WIS. STAT. § 990.01(1).[8]

¶ 62. Xerox contends that the MFDs at issue are "all-in-one" devices under the 1999 Computer Exemption Guidelines contained in the WISCONSIN PROPERTY ASSESSMENT MANUAL. The 1999 Guidelines define an "all-in-one" printer/scanner/fax/copier as a "[c]ombination device that includes an exempt device," and labels

---

[8] WISCONSIN STAT. § 990.01(1) states: "All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

these devices as "exempt." 1 WISCONSIN PROPERTY ASSESS-MENT MANUAL, Miscellaneous, Computer Exemption Guidelines (Oct. 2000). However, the comments to the Guidelines provide that "all-in-one" devices are "Electronic Peripheral Equipment—Exempt provided the device is connected to and operated by a computer." Xerox acknowledges that the comments to the Guidelines limit the applicability of the exemption, but argues that the MFDs at issue are still exempt because the main controller unit inside all of the MFDs is a "computer" within the meaning of the Guidelines. As noted, the Commission concluded that the computer referenced in the comments to the Guidelines must be external to the "all-in-one" device for the device to be an exempt electronic peripheral device under the statute.

¶ 63. Applying great weight deference to the Commission's interpretation of the Guidelines, we conclude that the Commission's conclusion that the computer referenced in the Guidelines must be an external computer is reasonable. The requirement that the device be not only "operated by" a computer but "connected to" a computer reasonably suggests that the computer contemplated in the Guidelines is external to the "all-in-one" device. Further, a device that is operated and controlled by an internal computer cannot be an exempt "peripheral electronic device" because it is not a "peripheral" within the commonly accepted meaning of the word. *See* WEBSTER'S NEW COLLEGE DICTIONARY 1071 (2005) (defining "peripheral" as "[a] piece of equipment that can be used with a computer to increase its functional range or efficiency, as a printer, scanner, disk, etc.").

¶ 64. Xerox further contends that the Commission's conclusion that, to be exempt under WIS.

216

STAT. § 70.11(39), a device must *be* an exempt item under § 70.11(39) and not merely *contain* an exempt item is contrary to the Guidelines' definition of an "all-in-one" device—a "[c]ombination device that includes an exempt device." We disagree. As should be obvious from our discussion above, the 1999 Guidelines do not provide that any "all-in-one" device containing an exempt device is exempt under the statute. Rather, they provide that an "all-in-one" device is exempt when it is "electronic peripheral equipment." As the circuit court noted, the approach of the 1999 Guidelines is consistent with the Commission's view that the device must *be* an exempt device and not merely *contain* an exempt device to be exempt. The Guidelines address the tax status of "all-in-one" devices as a whole, and do not examine the individual functions of the device to determine its status. Under the Guidelines, such devices are either exempt "electronic peripheral equipment" or they are taxable. Like the approach adopted in the Commission's decision, the 1999 Guidelines determine whether the device is exempt based on whether the item *is* an exempt item, not on whether it *contains* an exempt item.[9]

¶ 65. Xerox contends that the Commission erred in relying on Xerox's marketing materials in determining whether the MFDs at issue were exempt or nonexempt items under WIS. STAT. § 70.11(39). It argues these materials use the terms at issue "casually" and not in

---

[9] Xerox also suggests that the distinction the Commission makes between external and internal computers violates Equal Protection. We do not address this argument because it is insufficiently developed. *See Cemetery Servs. Inc. v. Wisconsin Dep't of Regulation & Licensing*, 221 Wis. 2d 817, 831, 586 N.W.2d 191 (Ct. App. 1998) (court of appeals need not address inadequately briefed claims of constitutional error).

their "technical or engineering sense," and therefore the definitions suggested by these materials should be disregarded. However, we have already concluded that the Commission reasonably relied on the nontechnical and common meanings of the terms at issue in interpreting § 70.11(39), and that its rejection of the technical definitions provided by Xerox's experts was not unreasonable. We therefore conclude that the Commission reasonably relied on Xerox's own statements about its products in determining the meaning of the computer-related terms in § 70.11(39).

¶ 66. Xerox argues that the Commission erred in applying against it the rule that claims of exemption are strictly construed against the taxpayer. Xerox asserts that this rule applies only in the interpretation of ambiguous tax statutes, citing *DOR v. Bailey-Bohrman Steel Corp.*, 93 Wis. 2d 602, 607, 287 N.W.2d 715 (1980), and that, because the statute is unambiguous, the rule of strict construction should not be applied to it.

¶ 67. Xerox's argument seeks to exploit the fact that the Commission did not expressly determine whether the statute was ambiguous or unambiguous. To the extent that the Commission may have applied the strict-construction rule without making an express determination of ambiguity,[10] we conclude that this fact would not change the outcome. To wit: We concluded above that the Commission's interpretation of the statute is reasonable. If Xerox's interpretation is also reasonable, the statute would be ambiguous and the Com-

---

[10] We question whether this rule was actually applied against Xerox. The Commission cited *Pabst Brewing Co. v. Milwaukee*, 125 Wis. 2d 437, 373 N.W.2d 680 (Ct. App. 1985), at the outset of its analysis for the proposition that exemption statutes are strictly construed against the taxpayer, but did not explicitly apply this principle in its analysis.

mission would have properly applied the rule of strict construction against Xerox. If the interpretation adopted by the Commission is the only reasonable interpretation, then the statute is unambiguous, but in that case the Commission's application of the strict construction rule against Xerox would not matter; Xerox would lose anyway because its interpretation of the statute was unreasonable.

¶ 68. Finally, Xerox argues that it produced sufficient evidence to rebut the presumption of correctness associated with the assessment, and suggests that the Commission erred in failing to shift the burden onto the Department after Xerox made its required showing. Xerox's view that the Commission's application of the burden-shifting analysis dictated the outcome in this decision is incorrect. The outcome of this case was determined largely by the Commission's construction of WIS. STAT. § 70.11(39), and its adoption of a legal rule—that an MFD must *be* an exempt item and not merely *contain* an exempt item to be exempt under WIS. STAT. § 70.11(39). The evidence provided by the parties was irrelevant to this determination. And while evidence was relevant to the Commission's application of this rule to the MFDs at issue, the Commission rejected the testimony of Xerox's in-house experts on the issue of how to classify the MFDs. Because the Commission rejected Xerox's testimony on the determinative issue, it would appear that Xerox did not meet its burden of proof. The Commission therefore did not err in its application of the burden-shifting test.

## CONCLUSION

¶ 69. Applying great weight deference, we conclude under the foregoing analysis that the Commission's determination that the MFDs manufac-

tured and leased by Xerox were nonexempt items was based on a reasonable interpretation and application of WIS. STAT. § 70.11(39). We further reject Xerox's argument that it was denied due process. Accordingly, we affirm the circuit court's order affirming the Commission's decision in this case.

*By the Court.*—Order affirmed.