SCHROEDER, d/b/a STAN SCHROEDER & ASSOCIATES, Appellant, v. AJAX CORPORATION, a Wisconsin corporation, Respondent.

*No. 518 (1974). Submitted on briefs January 7, 1976.—Decided March 12, 1976.*
(Also reported in 239 N. W. 2d 342.)

For the appellant the cause was submitted on the brief of *Aul & Ryan, S. C.,* attorneys, and *David W. Balcer,* of counsel, all of Milwaukee.

For the respondent the cause was submitted on the brief of *Adolph I. Mandelker,* attorney, and *David M. Kaiser,* of counsel, all of Milwaukee.

HEFFERNAN, J. This is an appeal from an order sustaining defendant-respondent Ajax Corporation's demurrer to plaintiff-appellant Schroeder's amended complaint. Schroeder appeals from that order and the judgment dismissing the complaint. We reverse.

We conclude that one in the position of Schroeder, who holds an employment agent's license in another state, has standing to sue for services rendered as an employment agent in an isolated transaction in Wisconsin, even though he has no Wisconsin license and would be foreclosed from suit if he "engaged in" business as an employment agent in Wisconsin.

Schroeder alleges that he is engaged in the consulting business, with an office in Chicago, Illinois. He is licensed by the state of Illinois as an employment agent. During June, 1971, the president of Ajax Corporation telephoned Schroeder at his office in Chicago and asked him to come to Milwaukee on the same day to give advice and assistance in connection with the employment of personnel for the corporation. Schroeder complied with the request.

Schroeder also alleges that, subsequent to the meeting on that day, and at the request of the Ajax Corporation, he introduced several people to the corporation, some of whom were hired by it. Substantially all of Schroeder's work with respect to the introduction of these employees was performed in Chicago. Except for meetings with the officers and employees of Ajax Corporation in Milwaukee, Schroeder did not transact any business in Wisconsin at any time mentioned in the complaint. Schroeder did not have an office or place of business of any kind in the state of Wisconsin. It is alleged that Ajax Corporation agreed to pay Schroeder certain sums for his services, which sums were only partially paid prior to the commencement of this action.

Schroeder commenced the action on February 14, 1973, to recover the money due and owing for services rendered. The action was based on contract.

Ajax Corporation demurred to Schroeder's complaint on the grounds that plaintiff did not have legal capacity to sue and that the complaint did not state facts sufficient to constitute a cause of action.

The trial court sustained the demurrer on the ground that Schroeder did not have legal capacity to sue, because there was no allegation that Schroeder had complied with the employment agency licensing provisions of ch. 105, Stats. The court allowed Schroeder twenty days to replead compliance with those provisions. Schroeder was unable to replead, for he was not licensed in Wisconsin. Judgment was entered in favor of Ajax Corporation on May 6, 1974. Schroeder appeals from the order on demurrer and from the judgment.

The following statutes are pertinent to this appeal: Sec. 105.01 (1), Stats. 1971, provided:

"105.01 Definition of 'employment agent'. The term 'employment agent':

"(1) Means all persons who furnish to persons seeking employment, information enabling or tending to enable such persons to secure the same, or who furnish employers seeking laborers or other help of any kind, information enabling or tending to enable such employers to secure such help, or who keep a register of persons seeking employment or help as aforesaid, whether such agents conduct their operations at a fixed place of business, on the streets or as transients, and also whether such operations constitute the principal business of such agents or only a side line or an incident to another business."

Sec. 105.15 (1), Stats. 1971, provided:

"105.05 License. (1) No person shall engage in the business of an employment agent for profit, or receive any fee, charge, commission or other compensation, directly or indirectly, for services as an employment agent,

including modeling agencies which secure work for persons to act as live models or to model for photography, without first having obtained a license from the department of industry, labor and human relations and executing a bond as hereinafter provided. The license shall constitute a license from this state to operate as an employment agent for compensation and shall not be transferable to any other person or inure to the benefit of any person other than the licensee."

Sec. 105.13, Stats. 1971, provided in part:

"105.13 **Refusal to issue and revocation of license.** The department may issue licenses to employment agents, and refuse to issue such license whenever, after due investigation, the commission finds that the character of the applicant makes him unfit to be an employment agent, or when the premises for conducting the business of an employment agent is found upon investigation to be unfit for such use, or whenever, upon investigation by the department, it is found and determined that the number of licensed employment agents or that the employment agency operated by the United States, the state or by the municipality or by 2 or more thereof jointly in the community in which the applicant for a permit proposes to operate is sufficient to supply the needs of employer and employes. . . ."

Sec. 105.05 (1), Stats. 1971, states that no person shall engage in the business of an employment agent for profit without obtaining a license from the department of industry, labor and human relations. Schroeder is admittedly engaged in the business of employment agent for profit in Illinois. If the statute is read literally, it would appear that Schroeder comes within its scope, regardless of the isolated nature of the transaction. We, however, construe the statute only to regulate employment agents "engaged in business" or "doing business" in Wisconsin.

In *Omnibus Financial Corp. v. Executive Search, Inc.* (1971), 16 Ariz. App. 115, 491 Pac. 2d 504, the

Arizona court was faced with a statute similar to sec. 105.05 (1), Stats. The court held:

"The other statute in question . . . which requires licensing of employment agents by the Industrial Commission, does not specifically limit its applicability to acts of securing employment for compensation done in this State. We hold that it is limited to such situations." (P. 117.)

Such an interpretation is consistent with a major purpose of sec. 105.05 (1), Stats. 1971, which is to regulate employment agencies for the protection of the Wisconsin resident from unfit employment agents and unfit agency facilities. *See:* sec. 105.13; *Graebner v. Industrial Comm.* (1955), 269 Wis. 252, 68 N. W. 2d 714; *National Staffing Consultants, Inc. v. District of Columbia* (D. C. 1965), 211 Atl. 2d 762; *Telex Corp. v. Balch* (8th Cir. 1967), 382 Fed. 2d 211; 20 A. L. R. 3d 606, 609. To hold that sec. 105.05 (1) precludes maintaining a suit in Wisconsin for services rendered wholly within another state by an employment agent engaging in no act of business in Wisconsin would not serve the purpose of the statute. If such were the case, every employment agency wishing to maintain a suit in Wisconsin would be required to be licensed by Wisconsin. Chapter 105 contains no such provision, and it cannot be so interpreted.

We conclude that ch. 105, Stats., must be interpreted to apply only where an employment agency *engages in business* in Wisconsin. The question on demurrer then is whether it appears from the face of the complaint that Schroeder engaged in the employment agency business in Wisconsin.

Schroeder contends that the phrase, "engage in the business," in sec. 105.05 (1), Stats., applies only if the actor's activities were conducted on a regular basis. Schroeder cites several authorities in support of that

proposition. 20 A. L. R. 3d 599, 626, states that, "a single act of procurement does not constitute the actor an employment . . . agent subject to licensing as such." 27 Am. Jur. 2d, *Employment Agencies*, p. 472, sec. 8, states:

"In jurisdictions where statutes or ordinances speak in terms of regulating the business of an employment agency . . . it is apparently the rule that a single act of procuring employment does not constitute a course of business such as will subject the actor to the regulatory or licensing requirements of the act."

In 93 A. L. R. 2d 90, 94, it is stated:

"The person who is regularly licensed and engaged in a business or profession is usually excused from licensing requirements, through application of the 'single or isolated transaction' rule, where he has acted temporarily at a place other than where he normally conducts his business or profession."

Similarly, see, 30 A. L. R. 858 and 118 A. L. R. 657. No Wisconsin cases that consider the isolated-transaction issue have been brought to the attention of this court. However, courts in other jurisdictions have recognized the standing of employment agents and others in licensed professions where the facts were similar to those alleged in this case. Those jurisdictions dealing with facts and statutes similar to those in the instant case have relied on the single or isolated-transaction rule and have exempted that single transaction from the constraints of the statute.

In *Saks Theatrical Agency v. Mentine* (1946), 24 N. J. Misc. 332, 48 Atl. 2d 644, plaintiff, doing business in Pennsylvania, sought relief in the New Jersey courts on a contract relative to the employment of some entertainers. Plaintiff, in response to a telephone communication from defendant, went to defendant's place of busi-

ness in New Jersey, where an employment contract was signed. Defendant breached the contract, and plaintiff sued. The court noted that the New Jersey statutes contained no specific provision regarding single transactions[1] by persons acting as employment agents. It concluded that the contract in question was plaintiff's only transaction in New Jersey. The court held that the evidence presented did not justify a conclusion that the plaintiff conducted an employment agency in New Jersey and that the contract in question was not in the course of similar transactions in New Jersey. Under the circumstances, the New Jersey court held that the plaintiff was not required to have a New Jersey employment-agent license in order to be entitled to judgment.

In *Omnibus Financial Corp., supra,* p. 116, plaintiff had no property, offices, or employees in the state of Arizona. The parties had made an oral contract, which was consummated by a telephone call accepted by the plaintiff in California. The Arizona court held:

"After reviewing the record in this case, we do not find that the activities of the plaintiff justify a conclusion that it acted as an employment agent in this state. There is no evidence that plaintiff had ever previously conducted any business in this state, and the affidavit of [plaintiff's president] states that plaintiff has never had any agents, officers, employees or representatives in this state, nor has it advertised in this state. The contract in question was initiated by telephone by defendant and accepted by plaintiff in California. The individual hired by defendant was a resident of Colorado. Defendant made the job offer to Scribner [the individual hired] by telephone while Scribner was in Colorado. From these facts, it is our opinion that the defendant has not sufficiently shown that plaintiff

[1] Unlike the New Jersey and Wisconsin statutes, many statutes require licensing even where there is only a single transaction. *See: Stahl v. Teaneck* (1958, D. N. J.), 162 Fed. Supp. 661.

acted in any manner as an employment agent in this state." (P. 117.)

While these cases do not involve facts identical to those in the case before us, these jurisdictions have exempted the isolated transaction from the strictures of the licensing statute. *See also: Telex Corp. v. Balch, supra; State v. Napier* (1902), 63 S. C. 60, 41 S. E. 13. Similar conclusions have been reached in cases involving nonresident real estate brokers,[2] architects,[3] accountants,[4] and undertakers,[5] under facts very similar to those in the present case.

Two of these cases warrant further discussion. In *Ressler v. Marks* (1932), 308 Pa. 205, 162 Atl. 666, the plaintiff real estate broker, licensed in New Jersey, sued in Pennsylvania to recover on a verbal contract. The plaintiff was not licensed in Pennsylvania. The defendant moved for judgment on the pleadings, arguing that the plaintiff could not recover because he did not allege that he was licensed in Pennsylvania. The Pennsylvania court held:

"If plaintiff was actually engaged in carrying on the business of a broker in this state, the conclusion of the court would be right [holding for defendant], irrespective of where his office was or whether he maintained an office in this commonwealth. On the pleadings, however, it cannot be said that he was carrying on a brokerage real estate business here, or that the present transaction was not the only one in which he engaged in this state.

---

[2] *Ressler v. Marks* (1932), 308 Pa. 205, 162 Atl. 666; *Frankel v. Allied Mills, Inc.* (1937), 293 Ill. App. 48, 11 N. E. 2d 979.

[3] *Dane v. Brown* (1934, 1st Cir.), 70 Fed. 2d 164; *Johnson v. Delane* (1955), 77 Idaho 172, 290 Pac. 2d 213.

[4] *City of Mayfield v. Reed* (1939), 278 Ky. 5, 127 S. W. 2d 847; *Respess v. Rex Spinning Co.* (1926), 191 N. C. 809, 133 S. E. 391.

[5] *Walton v. Commonwealth of Virginia* (1948), 187 Va. 275, 46 S. E. 2d 373.

We are not prepared to hold that a single transaction would . . . require him to take out a license before he could recover for his services. . . .

"Our conclusion is that the instant case is not such a clear one as should have been disposed of on the pleadings . . . but that it should go to trial at which, with all the facts developed, it can be seen whether the transaction on which plaintiff's claim rests was an isolated one, or whether he was doing business in this state in violation of the provisions of our statutes." (Pp. 208, 209.)

In *Dane v. Brown, supra,* the plaintiff, a licensed architect in Massachusetts, sued to recover for services in New Jersey. The plaintiff and the defendant held preliminary conferences in Massachusetts regarding the construction of a building on the defendant's land in New Jersey, with the plaintiff going into New Jersey to supervise the construction and discuss the plans with the defendant. The court held as follows:

"Assuming that the work of supervising the construction of the building for which an architect has drawn plans and specifications constitutes the practice of architecture, we still think that the plaintiff, by this single isolated case, though composed of several acts in connection with the supervision of the work of construction, as the record shows, cannot be held to have violated any provision of the New Jersey statute.

"It is well settled, we think, that such expressions as 'pursue the practice of any profession or business,' 'practicing architecture,' 'engaging in the practice of law,' 'engaging in business,' and similar terms, contemplate a course of business or professional practice, and not single isolated acts arising from unusual circumstances. . . .

"It is clear, we think, on the issue of whether the plaintiff was pursuing the practice of architecture in New Jersey, there was a mixed question of law and fact which was properly submitted to the jury . . . ." (Pp. 165, 166.)

Ajax Corporation argues that the single or isolated-transaction exception does not apply where the licensing

statute was enacted as a police measure for the protection of the public.

While Ajax Corporation cites no cases supporting the proposition that the isolated-transaction exception does not apply where the licensing statute is a police-power measure, there is some authority for such a proposition. Several courts have held that a general licensing statute enacted pursuant to the public welfare or police power encompasses even isolated transactions. *See: State v. Blackwell* (1941), 196 S. C. 313, 316, 13 S. E. 2d 433; *Mueller v. Burchfield* (1949 Mo. App.), 218 S. W. 2d 180; *Cantrell v. Perkins* (1941), 177 Tenn. 47, 146 S. W. 2d 134; *State v. Lindsey* (1969 Iowa), 165 N. W. 2d 807; 93 A. L. R. 2d 99, 100. As stated in *Lindsey, supra,* page 809:

"There is a well recognized exception to the single or isolated transaction rule relating to licensed activities, i.e., where the primary or sole purpose of the legislation involved is to protect the public peace or safety, *and where a single or isolated act could jeopardize it.*" (Emphasis supplied.)

In each of the cases cited, where an isolated transaction was held to come within a general licensing statute, it was clear that the single or isolated act jeopardized the public welfare. However, the fact that a licensing statute is enacted to protect the public does not necessarily preclude the application of the isolated-transaction rule. Whether an isolated act jeopardizes the public health or welfare depends upon the facts and circumstances of the case. This ordinarily cannot be resolved on demurrer. However, in the instant case, the facts seem relatively complete, and they do not evince any conduct contrary to the Wisconsin policy of protecting Wisconsin citizens.

In the instant case, a Wisconsin resident initiated the agreement with a nonresident employment agency. Substantially all of the work was performed outside the

state of Wisconsin; and, most importantly, Schroeder was licensed by Illinois pursuant to a statute similar to that of Wisconsin.

The latter point is of substantial significance. In *Telex, supra,* the court analyzed an isolated transaction by a nonresident in light of the public policy of employment-agency statutes. The court stated that the legislative policy behind regulating employment agencies is based upon a legislative intent to prevent fraudulent and incompetent practices. In its analysis of the transaction in question, the court stated:

"The prohibition of the statute must necessarily coincide with its recognized purpose of serving the public policy in protecting the public from misrepresentation and deceit. . . . We fail to see any public policy to be served by declaring this transaction illegal and void. The agreed services were rendered. They are entitled to be compensated." (Pp. 219, 220.)

Moreover, the apparent purpose of ch. 105, Stats., is to protect Wisconsin residents from unfit employment agents and unfit agency facilities. This purpose would not be defeated by an isolated transaction by a person who is licensed as an employment agent in another state. Here, Schroeder was licensed by the state of Illinois pursuant to Ill. Rev. Stat., ch. 48, sec. 197a, which is similar to sec. 105.13, Stats., *supra.* The Illinois statute provides in part:

"It shall be the duty of the department of labor . . . to refuse to issue licenses whenever, after due investigation, [it] finds that the character of the applicant makes him unfit to be an employment agent, or when the premises proposed to be used for conducting the business of an employment agency, is found, upon investigation, to be unfit for such use."

As in *Telex, supra,* the purpose of protecting Wisconsin residents from unfit employment agents would not be

served by declaring the agreement in this case illegal and void. Indeed, this court has recognized a need to weigh the extent of a person's activities in Wisconsin against a technical noncompliance with a regulatory licensing statute. In *Metropolitan Finance Corp. v. Matthews* (1953), 265 Wis. 275, 61 N. W. 2d 502, in a case involving the licensing of collection agents, this court held that the proposed activities in Wisconsin would be so minor that they would not be subject to regulation. Here, Schroeder's activity in Wisconsin was so minimal that, coupled with the fact that he was licensed under a statute essentially the same as Wisconsin's, the public purposes of ch. 105, Stats., would not be subverted by allowing Schroeder standing to enforce the contract.

*By the Court.*—Order and judgment reversed, and cause remanded for further proceedings.