KLOPPENBURG, J.
*119 ¶1 Payday Loan Resolution, LLC, William Karger, and Lauren Petruzzelli (collectively, Payday) appeal a circuit court order that affirmed an Order of the Administrator of the Wisconsin Department of Financial Institutions, Division of Banking (the Division). The Order requires that Payday, a non-Wisconsin business, cease certain business *120 activities in Wisconsin, pay a forfeiture, and issue refunds for all fees paid by Wisconsin clients to Payday, because Payday "was conducting unlicensed adjustment service company business" in violation of Wisconsin statutes and had not complied with an earlier order issued by the Division.
¶2 The parties do not dispute that the Division was exercising Wisconsin's "police power" in issuing the Order against Payday, and Payday does not dispute that it "was conducting unlicensed adjustment service company business" as stated in the Order. However, Payday argues that the Division's exercise of Wisconsin's police *281 power over Payday violates due process. Payday asserts that this is so because due process limitations on Wisconsin's exercise of its police power require greater contacts between Payday and Wisconsin than are necessary to establish "personal jurisdiction for judicial process," and because the requirements for "personal jurisdiction" are not present, it necessarily follows that due process bars the exercise of Wisconsin's police power against Payday. We reject Payday's argument as contrary to the test set forth by our supreme court for the proper exercise of Wisconsin's police power over out-of-state entities. Applying that test here, we conclude that the Division's issuance of the Order falls well within due process limits. Accordingly, we affirm.
BACKGROUND
¶3 Payday is a limited liability company located in and organized under the laws of Florida, and is engaged in the "debt settlement" business. In 2017, the Division received a consumer complaint against Payday *121 from a Wisconsin resident.[1] We will discuss the details of Payday's contacts with the Wisconsin resident in the discussion section that follows. It suffices to state here that the resident entered into a contract with Payday, which provided that Payday would negotiate to reach settlements or payment plans with the resident's debtors in return for a "consulting fee" to be paid by the resident.
¶4 On June 9, 2017, the Division sent a letter to Payday informing it that: (1) the Division "administers the adjustment service company law in Wisconsin"; (2) the Division determined that Payday was operating as an unlicensed adjustment service company in Wisconsin contrary to that law; (3) Payday must cease conducting "all such activity involving Wisconsin residents until the company is properly licensed"; and (4) Payday was "prohibited from collecting or receiving fees or other forms of compensation from Wisconsin consumers because it is not licensed." Pursuant to its statutory investigative powers, the Division requested that Payday provide information as to all Wisconsin residents who had contracted with the company. The Division also requested that Payday respond to the complaint that the Division had received and advise the Division of the actions that Payday was taking to avoid future violations.
¶5 Payday sent the Division a letter in response describing its activities as a "debt settlement company" and stating that it is a Florida company "required to abide by" Florida law only.
*122 ¶6 On June 27, 2017, the Division issued an Order to Payday, finding that Payday refused to refund the fees that it had collected from the Wisconsin complainant and that Payday was "conducting adjustment service company business with Wisconsin residents without first obtaining a license." The Division ordered that Payday cease conducting "adjustment service company business with a Wisconsin resident without first obtaining a license," provide a list of its Wisconsin clients, and refund to any Wisconsin clients all money paid by those clients to Payday that was not paid to the clients' creditors. The Order required that Payday issue the refunds to any Wisconsin clients by July 28, 2017.
¶7 Payday did not respond to the June Order. On August 9, 2017, the Division served on Payday a Notice of Hearing. The Notice directed Payday to respond in *282 writing to the Notice by August 31, 2017, and to appear at an administrative hearing on September 7, 2017. The Notice asserted that Payday violated the June Order and informed Payday of the potential penalties that the Division might impose upon Payday for failing to appear or upon finding that Payday violated any Wisconsin banking laws or Division rules or orders.
¶8 Payday failed to answer the Notice or appear at the hearing. On September 8, 2017, the Division issued an Order finding Payday in default and, therefore, to have "admitted to the matters asserted and the violations set forth in the Notice." The Division ordered that Payday cease its adjustment service company business activities in Wisconsin, pay a forfeiture, and issue refunds for all fees paid by Wisconsin clients to Payday.
*123 ¶9 Payday timely petitioned the Division for a rehearing, asserting that it is not subject to the licensing requirements in Wisconsin law because the Division lacks "personal jurisdiction" over it. Specifically, Payday asserted that because it is a Florida company and its contacts with Wisconsin residents are de minimis , attenuated, and initiated by the customer, the Division lacks "personal jurisdiction" to require Payday to obtain a license or to enforce orders against Payday. The Division denied the petition.
¶10 Payday petitioned for judicial review of the September Order. The circuit court affirmed the September Order, and Payday appeals.
DISCUSSION
¶11 Payday challenges none of the factual findings or legal conclusions in the Division's September 2017 Order, which is the subject of this appeal. Rather, Payday's sole argument is that the Order violates Payday's due process rights because the connection between Payday and Wisconsin is not sufficient to give the Division "personal jurisdiction" over Payday.
¶12 We review the decision of the Division, and not that of the circuit court. Daniels v. Wisconsin Chiropractic Examining Bd. , 2008 WI App 59, ¶4, 309 Wis. 2d 485, 750 N.W.2d 951. Whether the federal Due Process Clause is satisfied is a question of law that we review de novo. See City of S. Milwaukee v. Kester , 2013 WI App 50, ¶13, 347 Wis. 2d 334, 830 N.W.2d 710 ("Due process claims raise questions of law that we review de novo.").
¶13 In the first section that follows, we describe Wisconsin's law that applies to adjustment service companies such as Payday, and we review the case law *124 that acknowledges Wisconsin's strong interest in enforcing that law as an exercise of its police power.
¶14 In the second section, we turn to Payday's challenge to the Division's exercise of Wisconsin's police power in enforcing that law against Payday. We conclude that the contacts between Payday and Wisconsin were sufficient to support the Division's exercise of Wisconsin's police power over Payday consistent with due process.
¶15 Before proceeding, we observe that this appeal concerns only whether the Division's exercise of Wisconsin's police power comports with the federal Due Process Clause. In addition to complying with the federal Due Process Clause, a state's enforcement of its law against an out-of-state entity must also be consistent with the federal Commerce Clause. See Meyers v. Matthews , 270 Wis. 453, 459-61, 71 N.W.2d 368 (1955) (addressing whether the federal Commerce Clause was violated by Wisconsin's licensing requirement for collection agencies). Because Payday does not mount a Commerce Clause challenge, we do not discuss whether the Division's *283 exercise of Wisconsin's police power here is consistent with the Commerce Clause.
I. Wisconsin's Law Regarding Adjustment Service Companies
¶16 Under WIS. STAT. §§ 220.02(2)(b) and (3) (2017-18),[2] the Division shall "enforce and carry out all laws relating to" adjustment service companies. Payday does not dispute that it is an adjustment service company as defined in the statutes. See *125 WIS. STAT. § 218.02(1)(a) (a company that engages "in the business of prorating the income of a debtor to the debtor's creditor or creditors ... [for] a service charge or other consideration" is an adjustment service company).
¶17 Wisconsin law provides that "[e]ach adjustment service company shall apply to the division [of banking] for a license to engage in such business." WIS. STAT. § 218.02(2)(a)1. Chapter 218 further provides that, "At the time of making application and before engaging in business," the company must pay a nonrefundable $200 investigation fee as well as a $200 annual license fee. Sec. 218.02(2)(b). The applicable statute also provides that the Division shall issue a license upon finding that the required application has been filed and the fees paid, and that "the financial responsibility, experience, character and general fitness of the applicant ... are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly and efficiently within the purposes of this section." Sec. 218.02(3)(a) and (b). Additional statutes and regulations impose certain operational and reporting requirements on "licensees," including limits and caps on the fees that licensees may assess the debtors with whom they contract. See Sec. 218.02 and WIS. ADMIN. CODE § DFI-Bkg 73 (March 2014).
¶18 Under WIS. STAT. § 218.02(7), the Division has "the duty[,] ... power, jurisdiction and authority" to investigate and issue orders "to protect debtors from oppressive or deceptive practices of licensees," to regulate advertising and solicitation of business by licensees, to determine the maximum fees or charges that licensees may make, and "to prevent evasions of this section."
*126 ¶19 Setting aside its due process challenge, Payday does not dispute that these provisions, read together, prohibit an adjustment service company from doing business without a license issued by the Division with any Wisconsin resident.
¶20 Wisconsin courts have acknowledged the broad legislative goals to be served through Wisconsin's exercise of its police power by enforcing licensing provisions such as those at issue here. See Chapman Co. v. Service Broad. Corp. , 52 Wis. 2d 32, 42, 187 N.W.2d 794 (1971) (licensing provisions constitute an exercise of a state's police power "necessary" to protect "the general public" against "unscrupulous persons ... [who act] in an unethical and fraudulent manner"); Ford Motor Co. v. Lyons , 137 Wis. 2d 397, 435, 405 N.W.2d 354 (Ct. App. 1987) (licensing provisions "ensure the honesty, integrity, competency and financial stability of licensees," and carry "a consumer protection feature in that they seek to ensure that [clients] will not be subjected to fraud"). Our supreme court has in particular acknowledged the legislative goals to be served through Wisconsin's exercise of its police power by enforcing state licensing requirements *284 against out-of-state entities. See Meyers , 270 Wis. at 460-61, 71 N.W.2d 368 (licensing "is a conventional means of assuring responsibility and fair dealing on the part of foreign corporations coming into the state," and safeguards "members of the public who are peculiarly unable to protect themselves from fraud and overreaching of those engaged in" businesses which may take part in those potential abuses (quoted source omitted)).
¶21 Finally, this court has stated that the broad legislative goals to be served by Wisconsin's exercise of its police power so as to protect its residents via licensing provisions are particularly pronounced in the *127 regulation of adjustment service companies. In JK Harris Fin. Recovery Sys., LLC v. DFI , 2006 WI App 107, 293 Wis. 2d 753, 718 N.W.2d 739, we observed that in WIS. STAT. § 218.02(7) the Legislature directed "that the Division shall have the 'duty' and the 'power' to 'prevent evasions of this section' and to 'protect debtors from oppressive or deceptive practices.' " Id. , ¶21 (quoting § 218.02(7)(a) ). Based on that statutory language, we rejected a narrow interpretation of the provision defining "adjustment service companies" as being "inconsistent with these legislatively expressed goals." Id. Similarly, in Morgan Drexen, Inc. v. DFI , 2015 WI App 27, 361 Wis. 2d 271, 862 N.W.2d 329, we remarked that "[a] broad interpretation of the statute is in keeping with the statutory intent expressed in § 218.02(7)." Id. , ¶8.
¶22 From these cases, it emerges that, through its police powers, Wisconsin has a strong interest in protecting its residents in their dealings with adjustment service companies.
II. Whether the Division's Exercise of Wisconsin's Police Power in Enforcing Wisconsin's Adjustment Service Company Law Against Payday Comports with Due Process
¶23 This appeal requires that we determine whether the Division's exercise of Wisconsin's police power in issuing the Order against Payday was constitutional. Our supreme court has articulated the test that applies to that determination:
If [a] business, although in interstate commerce, has incidents and requires activities within the state intimately related to local welfare, then those incidents *128 and activities are subject to state regulation under the police power, unless congress has, by appropriate legislation, pre-empted the field with reference thereto.
Metropolitan Fin. Corp. v. Matthews , 265 Wis. 275, 278, 61 N.W.2d 502 (1953).
¶24 Although Metropolitan Finance does not expressly speak in due process terms, it nonetheless addresses the due process concern Payday raises, namely, the sort of contact with Wisconsin that justifies Wisconsin's exercise of its police power over an out-of-state entity. Accordingly, we conclude that Metropolitan Finance establishes that the test for whether Wisconsin can, consistent with due process, exercise its police power to regulate an out-of-state entity is whether the out-of-state entity "has incidents and requires activities within the state intimately related to local welfare."[3]
¶25 Payday offers a different test, which requires that the out-of-state entity have "more substantial" contacts with the state than are necessary for a court to obtain personal jurisdiction over the entity.
*285 [4] Payday further argues that the Division cannot meet this "personal jurisdiction plus" test because *129 Payday's contact with Wisconsin do not suffice "for even personal jurisdiction in state court."
¶26 The problem with Payday's argument is that it fails to acknowledge the binding police power test stated above, which addresses the contacts necessary for Wisconsin to exercise police power. Payday presents no law from the Wisconsin Supreme Court or the United States Supreme Court that overturns this test or that even suggests that the Due Process Clause requires more.
¶27 Rather, Payday bases its "personal jurisdiction plus" argument solely on the following language in Patrin v. Chrysler Credit Corp. , 530 F. Supp. 736, 740 (W.D. Wis. 1982), which in turn quoted, out of context, language from Aldens, Inc. v. La Follette , 552 F.2d 745 (7th Cir. 1977) : "[T]he connection between a state and the regulated person must be of a more substantial character than the 'minimum contacts' needed to support judicial process running against a person." Patrin , 530 F. Supp. at 740. Payday asserts that this language in Patrin is "binding" case law, "black letter law," and "established law." However, these assertions are false, in that we are not bound by federal non-United States Supreme Court opinions. See City of Weyauwega v. Wisconsin Cent. Ltd. , 2018 WI App 65, ¶12 n.4, 384 Wis. 2d 382, 919 N.W.2d 609 (decisions by federal courts other than the United States Supreme Court "do not bind us").
¶28 In sum, Payday necessarily fails to make a persuasive argument why we should apply a "personal jurisdiction plus" due process analysis in lieu of or in addition to the Metropolitan Finance test set forth above.
*130 ¶29 We now proceed to apply that test here. To repeat, that test is whether the out-of-state entity "has incidents and requires activities within the state intimately related to local welfare." Metropolitan Fin. , 265 Wis. at 278, 61 N.W.2d 502. As to the second part of this test, Payday makes no argument that its activities are not "intimately related to local welfare," and we have already explained Wisconsin's strong interest in protecting its residents through regulating the activities of adjustment service companies like Payday. We turn our attention to the facts pertinent to the first part of the test, whether Payday "has incidents and requires activities within the state."
¶30 The activities here comprise a contractual transaction between Payday and a Wisconsin resident. We relate the pertinent specifics of that transaction, taken from the documents incorporated in the Division's September Order. The Wisconsin resident discovered Payday via its website at some point before June 2016. She contacted Payday and spoke with a Payday employee. Payday sent her a contract, a power of attorney, cease-and-desist letters to be sent to creditors, and a dedicated bank account agreement. The contract provided for monthly payments over an estimated program term of ten months. The contract provided for a monthly consulting fee to be paid to Payday from the resident's monthly payments, and that "once the consulting fee [was] satisfied," the payments would accumulate in the dedicated bank account. The contract also provided *286 for a processing fee for the dedicated bank account. The contract noted that the Wisconsin resident's "total debt" was $16,474.20 and estimated that $5,765.97 would be needed to settle that debt over the ten months. The contract stated that there would be a $8,237.10 consulting *131 fee. The Wisconsin resident executed and returned the paperwork to Payday in June 2016.
¶31 We conclude that, under the Metropolitan Finance test, the contacts between Payday and Wisconsin were sufficient. In order for Payday to provide its services to the Wisconsin resident, Payday required that the Wisconsin resident sign a contract and arrange for payments to be made by her to Payday. These tasks certainly comprise "activities required in" Wisconsin, and activities of this type are precisely the target of the adjustment service company law that Wisconsin seeks to enforce to protect its residents. See Travelers Health Ass'n v. Virginia , 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) (giving " 'great weight' " consideration to "the 'consequences' of the contractual obligations in the state where the [client] resided" and the "state's interest in faithful observance of the [permit] obligations" in assessing due process limits on a state licensing law (emphasis added) (quoted source omitted)).
¶32 Although Payday does not address the Metropolitan Finance test directly, Payday does point to two Wisconsin cases and argues that those cases support Payday's view that its contacts with Wisconsin are insufficient to justify imposing regulatory authority over Payday. We address each.
¶33 First, while ignoring the test in Metropolitan Finance , Payday compares the facts in that case with those here. This reliance is misplaced because Payday does not deal with subsequent clarifying case law.
¶34 In Metropolitan Finance , our supreme court ruled that Wisconsin could not enforce its licensing requirement against a Missouri corporation that *132 proposed to "make[ ] use of" independent contractors not subject to its direction to solicit clients in Wisconsin. 265 Wis. at 276-79, 61 N.W.2d 502. However, in a later decision, our supreme court clarified that, in Metropolitan Finance , its determination that the Missouri corporation "was not doing business in this state [was] based wholly upon a hypothetical condition regarding the status of its solicitors." Meyers , 270 Wis. at 468, 71 N.W.2d 368. Upon the presentation of additional facts showing that the solicitors were "subject to the direction of the corporation," the court upheld Wisconsin's enforcement of its licensing requirements against the corporation. Id. at 468-69, 71 N.W.2d 368. Thus, the analysis in Metropolitan Finance does not help Payday.
¶35 Second, Payday cites Schroeder v. Ajax Corp. , 71 Wis. 2d 828, 239 N.W.2d 342 (1976). In that case, an Illinois resident provided services to a Wisconsin company at a time when the Illinois resident did not have a Wisconsin employment agent license, but did have an Illinois license obtained pursuant to an Illinois statute similar to Wisconsin's licensing statute. Id. at 838-39, 239 N.W.2d 342. The Illinois resident provided the services wholly in Illinois, and the contact between the Illinois resident and the Wisconsin company consisted of one isolated transaction. Id. at 832, 239 N.W.2d 342. Our supreme court held that the Wisconsin licensing statute did not apply to the Illinois resident. Id. at 840, 239 N.W.2d 342. The court concluded that the Illinois resident need not be subject to regulation by Wisconsin because the activity between that person and the *287 Wisconsin company was minimal and because the person was licensed under an Illinois statute that, like Wisconsin's similar law, protected against unfit employment agents, such that "the public purposes of [Wisconsin's statute] would not be subverted." Id. at 839-40, 239 N.W.2d 342. *133 ¶36 Payday's reliance on Schroeder is misplaced. Schroeder does not purport to establish a test, much less a due process test. So far as we can tell, its holding is fact-specific. Unlike in Schroeder , Payday neither points to a Florida statute that is similar to Wisconsin's nor explains how the public purposes of Wisconsin's regulation of adjustment service companies would not be subverted by immunizing Payday from enforcement of that statute. To the extent Schroeder provides guidance here, it cuts against Payday. The court in Schroeder recognized that even an "isolated transaction" may be subject to a general licensing statute enacted pursuant to the police power, where that transaction "jeopardize[s] the public welfare." Id. at 838, 239 N.W.2d 342.
¶37 Finally, Payday argues that affirming Wisconsin's exercise of its police power here "would leave foreign entities with uncertainty and exposed to unknown myriad regulatory schemes," and that "few businesses could operate if potentially exposed to 50 or more sets of different regulatory laws." Payday provides no legal or factual support for this proposition, and on its face it appears to defy common sense. Moreover, in its response brief the State asserts that this proposition raises a Commerce Clause issue and that Payday does not argue that the Division's conduct here violates the Commerce Clause. We take Payday to have conceded the point by its failure to address the State's response in its reply brief. Accordingly, we decline to consider this topic further. See United Coop. v. Frontier FS Coop. , 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).
*134 CONCLUSION
¶38 For the reasons stated, we conclude that the contacts between Payday and Wisconsin residents, coupled with Wisconsin's interest in exercising its police power by enforcing its law governing adjustment service companies, suffice to satisfy due process. Accordingly, we affirm the circuit court's order upholding the Division's authority to enforce the licensing requirement imposed by that law against Payday.
By the Court. -Order affirmed.

The Division received at least one other consumer complaint from a second Wisconsin resident. Both complaints and the interaction of Payday and the two Wisconsin residents are substantially similar. We choose to focus on just one of the consumers because the existence of the second contact with a second resident does not affect our analysis.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The rule also incorporates a Commerce Clause component, consistent with the analysis in Meyers v. Matthews , 270 Wis. 453, 71 N.W.2d 368 (1955). But, as stated above, Payday does not raise Commerce Clause issues in this appeal.

"Personal jurisdiction" is a term used to describe a court's authority to exercise its adjudicative power over an individual party. State v. Smith , 2005 WI 104, ¶18, 283 Wis. 2d 57, 699 N.W.2d 508. See also Jurisdiction, Black's Law Dictionary (10th Ed. 2014) (defining personal jurisdiction as "[a] court's power to bring a person into its adjudicative process").